IN THE UNITES STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | | |
| GOODMAN NETWORKS, INC., § | | Case No. 22-31641-mvl7 |
| § | | (Chapter 7) |
| Debtor. § | | |
| § | | |
| SCOTT M. SEIDEL, TRUSTEE, *et al.*, § | | |
| § | | |
| Plaintiff, § | | |
| § | | Adv. No. 23-03072-mvl |
| v. § | | |
| § | | |
| 18920 NW 11TH, LLC, *et al.*, § | | |
| § | | |
| Defendants. § | | |

**TRUSTEE'S RESPONSE TO DEFENDANTS STEVEN ZAKHARYAYEV'S AND
EVELINA PINKHASOVA'S MOTION TO DISMISS**

Davor Rukavina, Esq.
Tex. Bar No. 24030781
Thomas D. Berghman, Esq.
Tex. Bar No. 24082683
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
**MUNSCH HARDT KOPF & HARR P.C.**
500 N. Akard St., Ste. 4000
Dallas, Texas 75201
214-855-7500
drukavina@munsch.com
tberghman@munsch.com
jvasek@munsch.com

**COUNSEL FOR SCOTT M. SEIDEL,
CHAPTER 7 TRUSTEE**

TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE:

Scott M. Seidel, chapter 7 trustee (the "Trustee") for Goodman Networks, Inc. (the "Debtor"), files this brief in support of his *Trustee's Response to Defendants Steven Zakharyayev's and Evelina Pinkhasova's Motion to Dismiss*, in support of which the Trustee would respectfully show as follows:

## I.    BACKGROUND

1.      On August 5, 2023, the Trustee filed his *Original Compliant* (Dkt. No. 1, the "Compliant"), which sets forth claims and causes of action against 18920 NW 11th, LLC ("18920"), James Goodman ("Goodman"), James Frinzi ("Frinzi"), Steven Zakharyayev ("Zakharyayev"), Evelina Pinkhasova ("Pinkhasova"), People NQ, Inc. ("People"), JJC & People, LLC ("JJC"), and GDMN Family Investments 2, LLC ("GDMN").

2.      At a high level, the Complaint alleges Goodman sought to extract for himself whatever value the Debtor had left after initially depleting more than $65 million. Compl. ¶ 39. He sought advice from Frinzi, who suggested a stock sale and identified Zakharyayev as a potential purchaser. *Id.* ¶ 40. Zakharyayev involved 18920, which he and his wife Pinkhasova owned and controlled. *See id.* ¶¶ 30, 40. Goodman and the Goodman Entities[1] owned stock in the Debtor, and Goodman and others concocted a scheme by which "(i) the Goodman Entities would transfer the Transaction Shares to 18920; (ii) 18920 would demand redemption of the Transaction Shares from the Debtor; and (iii) the Debtor would use cash and other assets to satisfy the (in fact non-existent) redemption demand." *Id.* ¶ 41.

---

[1] Capitalized terms not defined herein have the meaning attributed to them in the Complaint.

3. On March 9 and 10, 2022, the following events transpired in furtherance of this scheme **within a 24-hour period** (among other things):

- Various Goodman Entities and 18920 entered into share purchase agreements pursuant to which 18920 would buy 4,032,918 shares of the Debtor's stock for $12,372,656. Compl. ¶¶ 43-45. However, 18920 did not have the funds to close. Compl. ¶ 47.

- Pinkhasova, on behalf of 18920, made a demand to the Debtor purporting to exercise a nonexistent mandatory stock redemption right. Compl. ¶ 49. However, 18920 had not paid for the Transaction Shares and therefore did not own them. *Id.*

- Frinzi, on behalf of the Debtor agreed to settle the invalid redemption demand in exchange for the Debtor issuing a $50 million note to 18920. Compl. ¶ 50.

- The Debtor and 18920 entered into a Settlement Agreement to compromise the note, under which "(i) the Debtor would pay 18920 $14,500,000; (ii) the Debtor would assign to 18920 one-half of the AMRR Note (such half representing $22 million) (the 'Half AMRR Note'), (iii) the Debtor would assign to 18920 the LSU License; and (iv) the Debtor would assign to 18920 the Trademarks (the Trademarks, the LSU License and the Half AMRR Note, collectively, the 'Transferred Assets')." Compl. ¶ 53.

4. Then, on March 11 and 15, 2022, the Debtor and GNET transferred $13,474,075.00 to 18920, who turned around and transferred $10 million to the Goodman Entities, purportedly as payment under the stock purchase agreements. The most charitable way to characterize this transaction would be to describe it as akin to a leveraged buyout, which would constitute a fraudulent transfer in any event, even if one declined to consider all the other questionable circumstances described in the Complaint.

5. The Complaint therefore seeks, *inter alia*, to recover the Transferred Assets or their value under fraudulent transfer law, to hold Frinzi liable for breaching his fiduciary duties as an officer of the Debtor and GNET, and to hold Goodman, Zakharyayev, and Pinkhasova accountable for their participation in the scheme and the benefit they derived from it.

6. On September 21, 2023, Zakharyayev and Pinkhasova (the "Movants") filed their *Defendants Steven Zakharyayev and Evelina Pinkhasova's Motion to Dismiss* (Dkt. No. 5, the "MTD").

## II.  ARGUMENT & AUTHORITIES

7. The Fifth Circuit has aptly summarized the dismissal standard under rule 12(b)(6) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. The facts alleged must "be enough to raise a right to relief above the speculative level," but the complaint may survive a motion to dismiss even if recovery seems "very remote and unlikely." *Twombly*, 550 U.S. at 555–56, 127 S. Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). Thus, "the complaint must provide more than conclusions, but it 'need not contain detailed factual allegations.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) ).

*Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).

8. It bears emphasizing that, when considering a motion to dismiss under rule 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). "'All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor.'" *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) ("quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). Rule 12(b)(6) motions are viewed with disfavor and rarely granted. *Lormand*, 565 at 232. The Court should therefore "adhere to the Supreme Court's admonition that '[t]he plausibility standard is not akin to a 'probability

requirement' ….'" *See Innova Hosp. San Antonio*, 892 F.3d at 729 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)).

A. **THE TRUSTEE HAS ADEQUATELY PLED A CLAIM FOR KNOWING PARTICIPATION IN AND/OR CONSPIRACY TO COMMIT BREACH OF FIDUCIARY DUTY**

9. The Movants claim "[t]he Trustee does not specify what tort the Individual Defendants supposedly conspired to commit." MTD p. 6. But "[b]reach of fiduciary duty is a tort." *Douglas v. Aztex Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App.—Tyler 1985). And the Complaint alleges, in at least three places, the Movants conspired with respect to Frinzi's breaches of his fiduciary duties:

> 127. Each of Goodman, Zakharyayev, and Pinkhasova knew that Frinzi, as the CEO of the Debtor and GNET, owed fiduciary duties to the Debtor and GNET. Each of Goodman, Zakharyayev, and Pinkhasova knew that Frinzi was unsophisticated and unexperienced as a CEO and was naive, and that could easily be manipulated, especially by his friends in the person of Goodman and Zakharyayev. Each of Goodman, Zakharyayev, and Pinkhasova knew that the Debtor was insolvent, and that only by **conspiring to cause Frinzi to breach his fiduciary duties** based on false, misleading, concealed, and fraudulent claims and demands, would Frinzi breach his fiduciary duties.
>
> * * *
>
> 129. **The conspiracy**, agreement, and overt actions of Goodman, Zakharyayev, and Pinkhasova **caused Frinzi** to make the large transfers from the Debtor and GNET that he did and, in the process, **to breach his fiduciary duties** to the Debtor and to GNET
>
> 130. Accordingly, the Trustee and GNET request a money judgment holding each of Goodman, Zakharyayev, and Pinkhasova jointly and severally liable with Frinzi for all **damages** awarded to the Trustee and GNET herein **for Frinzi's breaches of fiduciary duty**.

Compl. ¶¶ 127, 129, 130.

10. Thus, the Movants' motion to dismiss the Trustee's conspiracy claim either demonstrates their failure to understand the allegations reflects their attempt to set up a straw man argument. The Trustee otherwise cannot understand why the Movants believe he has alleged a claim for conspiracy to *fraudulently induce* Frinzi to breach his fiduciary duties, when neither

breach of fiduciary duty nor conspiracy includes fraudulent inducement as an element. Rather, all the Trustee must prove is the Movants' knowing participation in Frinzi's breach of his fiduciary duties. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 574 (1942) ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.").

11. Even though the Trustee has referred to this claim as one for "conspiracy," that does not necessarily mean he must prove all the elements of a traditional conspiracy. Judge Lindsay recently considered a motion to dismiss a claim for aiding and abetting breach of fiduciary duty, and he held the following:

> [T]he allegations in the Second Amended Complaint are sufficient to put Powers on notice that Plaintiff is asserting a claim for knowingly participating in Mr. Pethick's alleged breaches of fiduciary duty. This is so even though Count 4 is titled "Aiding and Abetting Breach of Fiduciary Duties." As Plaintiff's pleadings satisfy the elements for a claim of knowing participation in a breach of fiduciary duty, dismissal of Count 4 is not appropriate at this juncture.

*DeWolff, Boberg & Assoc., Inc. v. Pethick*, 3:20-CV-3649-L, 2022 WL 4589161, *8 (N.D. Tex. Sept. 29, 2022) (record citation omitted).

12. Likewise, it does not matter that the Trustee labeled this claim as one for "conspiracy" because he more than adequately pled a claim for knowing participation. And the MTD does not suggest otherwise. It focuses exclusively (and inexplicably) on fraudulent inducement. Ignoring that nonexistent element, the Movants do not appear to dispute that (i) the Trustee has pled a claim against Frinzi for breach of fiduciary duty; (ii) the Trustee has pled the Movants knowingly participated in Frinzi's breach(es); and (iii) even if the Trustee were required to prove all the elements of a traditional conspiracy, the Trustee has pled those elements as well. Nevertheless, out of an abundance of caution, the Trustee will address each of these sub-issues in turn.

> ### *i.* *The Trustee has Pled a Claim for Breach of Fiduciary Duty*

13. "In Texas, '[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary duty existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.'" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 403 (5th Cir. 2013) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. Ct. App. 2006)). The Trustee has plausibly alleged each of these elements in his Complaint.

14. First, "[i]t is well established that corporate officers owe fiduciary duties to the companies they serve." *Ginn v. NCI Building Sys., Inc.*, 572 S.W.3d 802, 836 (Tex. App.—Houston [1st] 2015) (citing, *e.g.*, *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963)). The Trustee alleged "Frinzi was the Chief Executive Officer of [the Debtor] and GNET, owing fiduciary duties to the Debtor and GNET." Compl. ¶¶ 20-21; *see also* Compl. ¶¶ 114, 120 (alleging Frinzi owed the Debtor and GNET duties of loyalty and care).

15. Second, the Complaint contains extensive allegations regarding Frinzi's breaches of his duties, including, but not limited to, the following:

- "Upon information and belief, Goodman informed Frinzi that the Transaction Shares had a redemption right. Upon further information and belief, Frinzi believed Goodman. Frinzi had only recently been made CEO (in October 2021) and Goodman, unlike Frinzi, had historical and institutional knowledge regarding the Plaintiffs. Upon further information and belief, Frinzi undertook no investigation or analysis as to whether there was an obligation for the Debtor to redeem the Transaction Shares. Upon information and belief, Frinzi did not seek legal counsel regarding the redemption demand by 18920 or review the operative corporate documents that would have addressed any potential redemption obligation of the Debtor. Rather, Frinzi simply took Goodman at his word, motivated by his desire to get his boss and majority shareholder money, even if it came at the expense of the Debtor." Compl. ¶ 65.

- "By March 1, 2022, Frinzi knew of the Debtor's insolvency and its inability to pay its debts as they came due. Frinzi should have known, as any reasonably prudent CEO should have known, that the financial or other

metrics required for a Texas corporation to redeem the Transaction Shares could not be satisfied by the Debtor at the time, if they even existed in the first place. At a minimum, a reasonably prudent CEO would have sought legal and/or financial counsel regarding the alleged redemption rights, certainly before causing tens of millions of dollars of Debtor and GNET property to be transferred." Compl. ¶ 66.

- "In agreeing to the foregoing transactions, including honoring the mandatory redemption demand, entering into the $50 Million Note, entering into the Settlement Agreement, and making the transfers provided for in the Settlement Agreement, Frinzi was not looking to the best interests of the Debtor but instead to enrich Goodman, through the Goodman Entities, at the expense of the Debtor, which lost assets worth tens of millions of dollars that it needed to pay its legitimate creditors. In so doing, he breached his duty of loyalty." Compl. ¶ 115.

- "In agreeing to honor an otherwise non-existent mandatory redemption obligation, without any due diligence, review of documents, advice or counsel, or common sense, Frinzi acted recklessly and committed gross negligence. No reasonably prudent officer would transfer tens of millions of dollars of desperately needed assets without significant due diligence, and only one acting recklessly to benefit Goodman would have done so. In so doing, Frinzi breached his duty of care. The documents and transfers he executed and orchestrated are the direct result of such breaches and constitute additional breaches of the duty of care: entering into the $50 Million Note to satisfy a liability that did not exist, entering into the Settlement Agreement to satisfy a liability and $50 Million Note that did not exist, and compromising and settling nothing, and making the Debtor Transfers, and the transfers of the Transferred Assets, to satisfy such non-existent settlement of such non-existent note, of such non-existent redemption obligation." Compl. ¶ 116.

16. Third, the Complaint likewise contains extensive allegations about the resulting damages, including, but not limited to, the following:

- "As of March, 2022, the Debtor had few remaining assets. The Debtor and/or GNET1 held, as payee, a secured promissory note in the amount of $44 million (the 'AMRR Note') payable by American Metals Recovery and Recycling, Inc. n/k/a MBG Holdings, Inc. ('AMRR'), an entity indirectly owned, and directly controlled, by Frinzi. The Debtor also held a License granted by Tiger Athletic Foundation to use and access certain property at LSU Tiger Stadium (the 'LSU License'). Further, the Debtor owned certain trademarks that it and its subsidiaries had used in conducting business (the 'Trademarks')." Compl. ¶ 34.

- "From late 2021 through early 2022, the Debtor had amassed tens of millions of dollars in cash, mainly because it stopped paying its largest creditors, including FedEx. Over $65 million in cash had already been removed from the Debtor between December 2022 and February 2022 via various insider transactions that are not the subject of this Complaint. One question for Goodman was how to exploit the remaining cash and other assets. Another question for Goodman was how to monetize his, and the Goodman Entities', equity in the Debtor."  Compl. ¶ 39.

- "On March 9, 2022—the same day as the redemption demand—Frinzi, on behalf of the Debtor, and Zakharyayev, on behalf of 18920, agreed to settle 18920's redemption demand in exchange for a $50 million promissory note issued by the Debtor to 18920 (the "$50 Million Note"). The Trustee has been provided an unsigned copy of the $50 Million Note. The Trustee is not aware if the $50 Million Note was executed. Frinzi did not have the corporate authority to bind the Debtor to the $50 Million Note."  Compl. ¶ 50.

- "The next day, March 10, 2022, 18920, through Pinkhasova, and the Debtor, through Frinzi, executed that certain Settlement Agreement (the "Settlement Agreement"). Frinzi did not have the corporate authority to bind the Debtor to the Settlement Agreement."  Compl. ¶ 51.

- "Under the Settlement Agreement, and in satisfaction of the $50 Million Note, the Debtor and 18920 agreed as follows:

    (i)    the Debtor would pay 18920 $14,500,000;

    (ii)   the Debtor would assign to 18920 one-half of the AMRR Note (such half representing $22 million) (the 'Half AMRR Note'),

    (iii)  the Debtor would assign to 18920 the LSU License; and

    (iv)   the Debtor would assign to 18920 the Trademarks (the Trademarks, the LSU License and the Half AMRR Note, collectively, the 'Transferred Assets')."  Compl. ¶ 53.

- "On March 11, 2022, GNET, from its funds held at East West Bank in account number ending in 0690, held in the name of GNET, transferred $3,976,000.00 to 18920 (the 'GNET Transfer')."  Compl. ¶ 54.

- "On March 11, 2022, the Debtor, from its funds held at Prosperity Bank in account number ending in 1838, held in the Debtor's name, transferred $7,498,075.00 to 18920."  Compl. ¶ 55.

- "On March 15, 2022, the Debtor, from funds it held at RBC Capital Markets, LLC, or its affiliates or subsidiaries in account number ending 1568, transferred $2,000,000.00 to 18920 (together with the $7,498,075.00 transfer, the 'Debtor Transfers')." Compl. ¶ 56.

- "The Debtor was damaged by the foregoing breaches of fiduciary duty through the loss of tens of millions of dollars in cash and property." Compl. ¶ 117.

- "GNET was damaged by Frinzi's breaches of duty in that GNET transferred and lost $3,976,000.00 of its funds for no return benefit whatsoever." Compl. ¶ 122.

17. The Trustee has pled a plausible claim for breach of fiduciary duty, and the Movants have not suggested otherwise.

> ### *ii. The Trustee has Pled a Claim for Knowing Participation in Breach of Fiduciary Duty*

18. "Under Texas law, 'where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.'" *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (quoting *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942)). "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Id.* (citing *Cox Tex. Newspapers, L.P. v. Wootten,* 59 S.W.3d 717, 721–22 (Tex. App. 2001)). In addition to pleading a breach of fiduciary duty in detail as set forth above, the Trustee also pled each of these elements.

19. First, "Frinzi was the Chief Executive Officer of [the Debtor] and GNET, owing fiduciary duties to the Debtor and GNET." Compl. ¶¶ 20-21. Second, "[e]ach of Goodman, Zakharyayev, and Pinkhasova knew that Frinzi, as the CEO of the Debtor and GENT, owed fiduciary duties to the Debtor and GNET." Compl. ¶ 127. Even if the Trustee had not alleged this

element expressly, the Court could reasonably infer that people who own and control a company, Compl. ¶ 30, and came recommended to participate in a multimillion-dollar transaction, Compl. ¶ 40, are sophisticated enough to understand and recognize fiduciary duties. Third, "[e]ach of Goodman, Zakharyayev, and Pinkhasova knew that the Debtor was insolvent, and that only by conspiring to cause Frinzi to breach his fiduciary duties based on false, misleading, concealed, and fraudulent claims and demands, would Frinzi breach his fiduciary duties." *Id.* The Trustee has alleged a plausible claim for knowing participation in a breach of fiduciary duty, so the Court should deny the MTD.

   ***iii. The Trustee has Pled a Claim for Traditional Conspiracy to Commit Breach of Fiduciary Duty***

  20. "Civil conspiracy is a derivative tort; therefore, liability for civil conspiracy depends on participation in an underlying tort." *Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 402 (5th Cir. 2013); *Paschal v. Great Western Drilling, Ltd.*, 215 S.W.3d 437, 450 (Tex. App.—Eastland 2006) (recovery for conspiracy is not based on the conspiracy itself but on an underlying tort). "To establish a civil conspiracy, one must prove the following: (1) a combination of two or more persons; (2) an object to be accomplished (either an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Holden v. Holden*, 456 S.W.3d 642, 658-59 (Tex. App.—Eastland) (citing *Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex. 2005)).

  21. "'[P]roof of conspiracy must usually be made by circumstantial evidence.'" *Id.* at 659 (quoting *Paschal*, 215 S.W.3d at 453). "'Inferences of concerted action may be drawn from joint participation in the transactions and from enjoyment of the fruits of the transactions.'" *Id.* "As to the element of an unlawful, overt act, a cause of action for conspiracy may be based on a

breach of fiduciary duty." *Id.*; *Matter of Alabama & Duleavy, Ltd.*, 983 F.3d 766, 777 (5th Cir. 2020) (citing *Paschal v. Great Western Drilling*, 215 S.W.3d at 450, for the proposition that the intentional tort of breach of fiduciary duty can be the basis of a civil conspiracy). "'Once a conspiracy is proven, each conspirator is responsible for all acts done by any of the conspirators in furtherance of the conspiracy.'" *Holden*, 456 S.W.3d at 659 (quoting *Paschal*, 215 S.W.3d at 451).

22.     Bearing these principles in mind, the Trustee has plausibly pled the elements of a civil conspiracy:

<u>A combination of two or more persons</u>

- "Various of the Defendants implemented the plan in a nefarious manner, employing concealment and misleading documents in an attempt to "paper up" something they knew to be nefarious and tortious." Compl. ¶ 41.

- Count 7 specifically refers to Goodman, Zakharyayev, and Pinkhasova in multiple places. Compl. ¶¶ 126-130.

<u>An object to be accomplished (either an unlawful purpose or a lawful purpose by unlawful means)</u>

- "Each of Goodman, Zakharyayev, and Pinkhasova conspired to deprive the Plaintiffs of valuable assets, based on a non-existent mandatory redemption obligation which each knew, or should have known, did not exist and would be asserted wrongfully and fraudulently to cause the Debtor and GNET to make such large and valuable transfers." Compl. ¶ 126.

<u>A meeting of the minds on the object or course of action</u>

- "Each of Goodman, Zakharyayev, and Pinkhasova knew that Frinzi, as the CEO of the Debtor and GNET, owed fiduciary duties to the Debtor and GNET. Each of Goodman, Zakharyayev, and Pinkhasova knew that Frinzi was unsophisticated and unexperienced as a CEO and was naive, and that could easily be manipulated, especially by his friends in the person of Goodman and Zakharyayev. Each of Goodman, Zakharyayev, and Pinkhasova knew that the Debtor was insolvent, and that only by conspiring to cause Frinzi to breach his fiduciary duties based on false, misleading, concealed, and fraudulent claims and demands, would Frinzi breach his fiduciary duties." Compl. ¶ 127.

<u>One or more unlawful, overt acts</u>

- "Each of Goodman, Zakharyayev, and Pinkhasova, actively participated in said conspiracy: Goodman by orchestrating it and having Frinzi pay on a non-existing mandatory redemption obligation, Pinkhasova by fraudulently asserting such mandatory redemption obligation in writing and on account of shares that 18920 did not even own, and Zakharyayev by entering into the subsequent negotiations and documents with Frinzi to cause Frinzi to transfer the Cash Transfers and the Transferred Assets." Compl. ¶ 128.

<u>Damages as the proximate result</u>

- Damages are discussed above in connection with the breach of fiduciary duty claim itself.

23. The MTD does not address any of these elements directly, instead focusing exclusively on fraudulent inducement and reasonable reliance, neither of which has any bearing on the Trustee's conspiracy claim. The Trustee has plausibly pled both a knowing participation claim and a traditional conspiracy claim, so the Court should deny the MTD.

B. **THE TRUSTEE HAS ADEQUATELY PLED A CLAIM FOR FRAUD**

24. The Defendant's motion to dismiss the Trustee's fraud claim mischaracterizes both Texas fraud law and the allegations in the Complaint. "The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

25. With respect to two elements, which they effectively lump together, the Movants grossly mischaracterize the applicable law. They begin by arguing that, "[t]o state a claim for

fraudulent inducement, the Trustee must …allege that Frinzi *reasonably* relied on a *material* representation made by the Individual Defendants." MTD p. 7 (emphasis original). They then cite *Shandong Yinguang Chem. Indus.*, 607 F.3d at 1032-33, for the proposition that "a representation is material only 'if a *reasonable* person would attach importance to and be induced to act on the information.'" *Id.* (emphasis original). Finally, they claim "the Trustee's allegations contradict each of these essential elements." MTD. P. 9.²

26. But there are three things wrong with this argument. First, the definition of materiality the Movants cite from *Shandong Yinguang Chem. Indus.* plainly sets forth an objective test. It asks whether a reasonable person would attach importance to a representation, not whether it was reasonable for Frinzi subjectively to find it important. The Complaint alleges two misrepresentations: "that there was a mandatory redemption obligation and that 18920 owned the Transaction Shares …." Compl. ¶ 133. The Movants cannot credibly contend—nor do they— than an objectively reasonable corporate executive would have knowingly honored a nonexistent mandatory redemption obligation based on a demand from an entity he or she knew did not own any shares. They simply allege Frinzi should have known, which is not the test.

27. Second, the law requires *justifiable* reliance, not *reasonable* reliance. "'[J]ustifiable reliance' is not the same as 'reasonable reliance,' and the Texas Supreme Court has specifically held that a victim of fraud is generally under no duty to discover the truth by exercising

---

² Specifically, they point to the allegations in the Complaint "that Frinzi transferred those tens of millions of dollars without (1) undertaking 'any investigation or [performing any] analysis as to whether there was an obligation for the Debtor to redeem the Transaction Shares'; (2) 'seek[ing] legal counsel regarding the redemption demand by 18920; or (3) review[ing] the operative corporate documents that would have addressed any potential redemption obligation of [Goodman Networks].' MTD p. 8 (citing Compl. ¶¶ 65-66). In a footnote, the Movants also claim the Trustee "alleges that Frinzi did not rely on the Individual Defendants' Representations *at all*" because he "alleges that Frinzi actually 'identified Zakharyayev to be the third party to purchase a negotiated amount of the Series A-1 Preferred Stock.'" MTD p. 8, n.7 (quoting Compl. ¶ 40). But in resolving a 12(b)(6) motion to dismiss, the Court must draw all reasonable inferences in the Trustee's favor. The Complaint alleges Goodman asked Frinzi's advice and Frinzi proposed for Goodman to sell his stock. Compl. ¶ 39-40. One can reasonably infer from these allegations that Frinzi gave this advice in good faith and then Goodman and the other defendants manipulated it nefariously.

proper care." *Ginn v. NCI Building Sys., Inc.*, 472 S.W.3d 802, 830 (Tex. App.—Houston [1st] 2015) (citing *Koral Indus. v. Sec.-Conn. Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990)). In the words of the Restatement:

> Although the plaintiff's reliance on the misrepresentation must be justifiable, ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.... There will be cases in which a plaintiff may be justified in relying upon the representation, even though his conduct in doing so does not conform to the community standard of knowledge, intelligence, judgment or care. Thus, under the rule stated in § 540, the recipient of a fraudulent misrepresentation is not required to investigate its truth, even when a reasonable man of ordinary caution would do so before taking action; and it is only when he knows of the falsity or it is obvious to him that his reliance is not justified.

*Id.* at 828-29 (quoting RESTATEMENT (SECOND) OF TORTS § 545A cmt. B (1977)).[3] The Motion to dismiss does not address *justifiable* reliance at all.[4]

28. Third, even if it were true that the Trustee pled his breach of fiduciary duty and conspiracy/knowing-participation claims in a way that contradicts his fraud claim—a point he does not concede because fraud does not require reasonable reliance—"[a] party may plead alternative and inconsistent facts or remedies against several parties without being barred." *Guy James Const. Co. v. Trinity Indus., Inc.*, 644 F.2d 525, 530 (5th Cir. 1981) (citing Fed. R. Civ. P. 8, 20); *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 619 (N.D. Tex. 2016) (citing Fed. R. Civ. P. 8(d)(2) for the proposition that "the Federal Rules permit plaintiffs to plead alternative, inconsistent claims").

29. Cases such as *Mora v. Univ. of Tex. Southwestern Med. Ctr.*, 469 Fed. Appx. 295 (5th Cir. 2012), are distinguishable. Mora's complaint contained two threadbare paragraphs

---

[3] The Supreme Court of Texas has relied on other sections of the Restatement in connection with analyzing other elements of fraud. *See Ginn v. NCI Building Sys.*, 472 S.W.3d at 828.

[4] Even if it did, the Complaint plausibly alleges Frinzi's justifiable reliance: "Goodman had told him that there was a mandatory redemption right, and Zakharyayev, who Frinzi knew to be a lawyer, and who he knew to represent 18920, as well as Zakharyayev's wife, would not be making a fraudulent demand." Compl. ¶ 137.

alleging a claim for retaliation under the Americans with Disabilities Act. *Id.* at 298. But the complaint also alleged her prior employer had actually accommodated her disability and she did not complain otherwise until after being terminated. *Id.* at 299. These impossibly contradictory allegations rendered the ADA claim "implausible on its face." *Id.* But the Movants have not identified any similarly irreconcilable conflict in the Trustee's Complaint, so the Court should deny the Motion to dismiss.

30.   The Movants also mischaracterize the allegations in the Complaint by suggesting the Trustee "does not allege that [Pinkhasova] had personal knowledge that any of the representations contained in the redemption letter were false." MTD p. 9, n. 8 (citing Compl. ¶ 144). But the Complaint alleges, *inter alia*, as follows:

> She made these false representations with knowledge of their falsity or recklessness as to their falsity, for the reasons discussed above (including the lack of any due diligence and the rational impossibility for an equity redemption when the Debtor was known and admitted to be insolvent), the knowledge of her husband and of 18920 being imputed to her to the extent she lacked personal knowledge, and her own knowledge that 18920 had not paid for, and therefore did not own, the Transaction Shares.

Compl. ¶ 134. As discussed above, the test for fraud requires that, "when the defendant made the representation the defendant knew it was false **or made the representation recklessly and without knowledge of its truth** …." *Shandong Yinguang Chem. Indus.*, 607 F.3d at 1032-33 (citing *Ernst & Young v. Pacific Mut. Life Ins.*, 51 S.W.3d a 577) (emphasis added).

31.   Under the applicable standards, the Trustee has alleged a plausible claim for fraud against Pinkhasova, so the Court should deny the MTD.

C.   **DISMISSAL OF THE AIDING & ABETTING CLAIM SHOULD BE WITHOUT PREJUDICE**

32.   Regarding the Trustee's aiding and abetting claim, the Movants assert "both the Fifth Circuit and courts in this district have held that no such cause of action exists." MTD p. 10. But that overstates the state of the law. The Fifth Circuit has merely acknowledged the Texas

Supreme Court's declination to say whether such a cause of action exists. *See Midwestern Cattle Marketing, LLC v. Legend Bank, N.A.*, 800 Fed. Appx. 239, 249-50 (5th Cir. 2020) (affirming dismissal because "we cannot recognize a claim that the Texas Supreme Court has yet to expressly adopt"); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d 753, 781 (5th Cir. 2918) (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017), for the proposition that "[t]he Texas Supreme Court 'has not expressly decided whether Texas recognizes a cause of action for aiding and abetting.'").

33. The Court went on to state, "[w]hen sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts." *Id.* But the fact that the Texas Supreme Court has not yet recognized a generalized cause of action for aiding and abetting means something different than saying one does not exist at all. The Texas Supreme Court may still recognize one in the future. The Court should, therefore, exercise its discretion do dismiss Count 9 without prejudice. As Justice Kavanaugh explained during his tenure on the Court of Appeals for the District of Columbia:

> [W]hen a district court grants a Rule 12(b)(6) motion to dismiss for failure to state a claim, that dismissal "operates as an adjudication on the merits" under Rule 41(b) "[u]nless the dismissal order states otherwise." And "an adjudication on the merits" is synonymous with a dismissal with prejudice. *See Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). Therefore, a district court order that dismisses a case under Rule 12(b)(6) without stating whether it is with or without prejudice operates as a dismissal with prejudice.

*Rollins v. Wackenhut Services, Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J. concurring).

34. "[U]nder Rules 41(b) and 12(b)(6), a district court has discretion to dismiss a complaint without prejudice when the district court concludes that the circumstances so warrant." *Id.* And the circumstances here warrant dismissal without prejudice. The Trustee may wish to

pursue this claim either in Texas state court (to obtain recognition from the Texas Supreme Court) or later in this Court (assuming the Texas Supreme Court recognizes the cause of action in another case). Though the Trustee does not concede that dismissing Count 9 with prejudice would necessarily bar future litigation under the doctrines of *res judicata* or collateral estoppel, dismissal *without* prejudice eliminates the possibility that the Movants might raise these arguments if and when the time comes to bring these claims again. There is no reason why the Court should potentially bar future litigation in the event the Texas Supreme Court eventually recognizes claims for aiding and abetting.

### III. ALTERNATIVE MOTION FOR LEAVE TO AMEND

35. Alternatively, to the extent the Court determines the Trustee failed to plead any element of a cause of action with sufficient particularity, the Trustee requests leave to amend. Rule 15 provides: "[t]he court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). There is a bias in favor of granting leave to amend, and the Court should not deny leave to amend with a substantial reason. *E.g. Laruche Imports, Inc. v. APL Ltd.*, No. 11-3127, 2012 U.S. Dist. LEXIS 15731, *2 (S.D. Tex. Feb. 8, 2012). "Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable." *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, N.D. Tex. 2016) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be

granted" (internal alterations omitted))). Accordingly, the Court should permit the Trustee to amend the Complaint to the extent necessary to meet applicable pleading standards.

## IV.   CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully request that the Court enter an order (A) denying the MTD; (B) granting leave to amend the Complaint to the extent the Court would otherwise be inclined to grant the MTD; and (C) providing the Trustee such other and further relief to which he is entitled at law or in equity.

RESPECTFULLY SUBMITTED this 16th day of October, 2023.

**MUNSCH HARDT KOPF & HARR P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Tex. Bar No. 24030781
Thomas D. Berghman, Esq.
Tex. Bar No. 24082683
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
500 N. Akard St., Ste. 4000
Dallas, Texas 75201
214-855-7500
drukavina@munsch.com
tberghman@munsch.com
jvasek@munsch.com

**COUNSEL FOR SCOTT M. SEIDEL, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that, on October 16th, 2023, a true and correct copy of this document (along with any attachments) was served via the Court's CM/ECF system on all parties entitled to such notice, including counsel for Steven Zakharyayev and Evelina Pinkhasova (jgolinkin@jlcfirm.com).

      By:  /s/ Davor Rukavina
      Davor Rukavina, Esq.