

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 12, 2024**

_____
**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § | § | **Chapter 11** |
| **GOODMAN NETWORKS, INC.,** § | § | **Case No. 22-31641-MVL-7** |
| Debtor. § | § | |
| | § | |
| **SCOTT M. SEIDEL, TRUSTEE;** § | § | |
| **and GNET ATC, LLC,** § | § | |
| Plaintiffs, § | § | |
| | § | |
| v. § | § | **Adv. Pro. No. 23-03072-MVL** |
| | § | |
| **18920 NW 11th, LLC; JAMES** § | § | |
| **GOODMAN; JAMES FRINZI;** § | § | |
| **STEVEN ZAKHARYAYEV;** § | § | |
| **EVELINA PINKHASOVA'** § | § | |
| **PEOPLE NQ INC.; JJC &** § | § | |
| **PEOPLE LLC; GDMN FAMILY** § | § | |
| **INVESTMENTS 2, LLC,** § | § | |
| Defendants. § | § | |

**ORDER GRANTING IN PART AND DENYING IN PART STEVEN ZAKHARYAYEV
AND EVELINA PINKASHOVA'S MOTION TO DISMISS**

1

Before the Court is Defendants Steven Zakharyayev and Evelina Pinkhasova's (the "**Individual Defendants**") Motion to Dismiss (the "**Motion**"), filed on September 22, 2023, at ECF No. 7. Through the Motion, the Individual Defendants seek dismissal of Counts 7-9 of the Original Complaint filed by the duly appointed Chapter 7 trustee, Scott Seidel (the "**Trustee**" and together with GNET ATC, LLC, the "**Plaintiffs**") at ECF No. 1 (the "**Complaint**"). Specifically, the Individual Defendants seek dismissal of the Trustee's conspiracy, fraud, and aiding and abetting causes of action.

A hearing was held on the Motion on November 8, 2023. Counsel appeared for the Trustee and the Individual Defendants. After hearing argument on the underlying issues, the Court took the Motion under advisement. Accordingly, after considering the issues presented, the applicable authority, and the briefing and oral arguments of counsel, the Court concludes that the Motion should be GRANTED IN PART AND DENIED IN PART, as more particularly detailed hereinafter. The following constitutes the Court's ruling.

## I.  Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. The Court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  Factual Background

The Plaintiffs allege the following facts, among others, in the Complaint:[1]

---

[1] The Plaintiffs' facts are taken as true for purposes of the Motion.

2

As of March 2022, the Debtor had few remaining assets including a secured promissory note of $44 million payable by American Metals Recovery and Recycling, Inc. n/k/a MBG Holdings, Inc. ("**AMRR**"), a license from the Tiger Athletic Foundation, and certain trademarks that it and its subsidiaries used to conduct business. ECF No. 1, at ¶ 34. By March 1, 2022, the Debtor had insufficient assets to satisfy obligations to its creditors. *Id.* at ¶ 35.

The Debtor issued shares of Series A-1 preferred stock in connection with its prior chapter 11 case in 2017. *Id.* at ¶ 36. While a previous mandatory redemption right existed in 2017 by virtue of the Debtor's Third Amended and Restated Certificate of Formation filed with the Texas Secretary of State, no mandatory redemption right existed in 2022. *Id.* In fact, the Debtor filed its *Sixth Amended and Restated Certificate of Formation* with Texas Secretary of State in 2020, which removed the mandatory redemption provision for Series A-1 Preferred Stock. *Id.* at ¶ 37.

James Goodman ("**Goodman**") sought to monetize his, and the Goodman Entities', equity in the Debtor, and James Frinzi ("**Frinzi**"), the acting chief executive officer of GNET ATC, LLC ("**GNET**"), proposed that Goodman seek to sell some or all of the Series A-1 Preferred Stock held by the Goodman Entities.[2] *Id.* at ¶ 39-40. Frinzi identified Steven Zakharyayev ("**Zakharyayev**") to be the third party to purchase a negotiated amount of the Series A-1 preferred stock and introduced Zakharyayev to Goodman. *Id.* at ¶ 40. Zakharyayev and his wife Evelina Pinkhasova ("**Pinkhasova**") owned 18920 NW 11th, LLC ("**18920**"). On March 9, 2022, 18920 purchased 3,407,076 Series A-1 preferred shares in Goodman Networks from three companies controlled by Goodman for approximately $12,000,000. *Id.* at ¶ 42-45, 48. In each of the purchase agreements, 18920 agreed that it would have immediately available funds to pay the purchase price. *Id.* at ¶ 47.

---

[2] Capitalized terms not defined herein shall adhere to the meaning ascribed to such terms in the Complaint.

3

On March 9, 2022, Pinkhasova wrote to Goodman Networks on behalf of 18920 and demanded redemption of its shares. *Id.* at ¶ 49. At the time of the demand, payment for the shares had not been received, nor had the shares been transferred to 18920. *Id.* Further, no mandatory redemption obligation existed. *Id.* Nevertheless, Frinzi, on behalf of the Debtor, negotiated a promissory note with Zakharyayev, on behalf of 18920, wherein the Debtor promised to pay $50,000,000 to 18920 (the "**Promissory Note**"). *Id.* at ¶ 50. Soon after, 18920 agreed to release the Debtor from its obligations under the Promissory Note in exchange for $14,500,000 and transfer certain assets pursuant to a settlement agreement (the "**Settlement Agreement**"). *Id.* at ¶ 53. In the Settlement Agreement, the Debtor also agreed to assign half of its intertest in a $44 Million promissory note due and payable from AMRR to 18920 and transfer its interest in another $4.5 million promissory note with a different third party to 18920. *Id.* To date, the Debtor and GNET have paid at least $13.2 million to 18920. *Id.* at ¶ 57.

On September 6, 2022, various petitioning creditors filed an involuntary petition against the Debtor, thereby initiating a bankruptcy case under Chapter 7 of the Bankruptcy Code and creating the Debtor's bankruptcy estate. The Court entered an order for relief against the Debtor on December 12, 2022. On August 5, 2023, the Plaintiffs filed their Complaint, commencing the above-captioned adversary proceeding. On September 22, 2023, the Individual Defendants filed their Motion to Dismiss.

### III.  Legal Standard

The Individual Defendants seek dismissal of the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (the "**Rules**"). Rule 12(b)(6) is made applicable to adversary proceedings before this Court by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), which permits dismissal of a complaint if the plaintiff fails

4

to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); FED. R. BANKR. P. 7012(b). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, to withstand a 12(b)(6) motion, a complaint must contain sufficient facts to state a facially plausible claim to relief. *Twombly*, 550 U.S. at 570. This plausibility requirement sits somewhere between possible and probable and is satisfied where the plaintiff's pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Conclusions, labels, and formulaic recitations of the elements of a claim are insufficient to withstand a 12(b)(6) motion. *Id.*

Where, as here, a complaint alleges fraud, Rule 9(b), made applicable to adversary proceedings by Bankruptcy Rule 7009, upgrades the pleading standard, requiring that the party asserting fraud state with particularity the circumstances constituting fraud or mistake, though malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. FED. R. BANKR. P. 7009. Rule 9(b) typically requires the plaintiff to identify the "who, what, when, where, and how" of the alleged fraud. *In re Dual D Health Care Operations, Inc.*, No. 17-41320-ELM, 2021 WL 3083344, at *5 (Bankr. N.D. Tex. July 21, 2021).

In reviewing the Complaint and considering the Motion, the Court must accept all well-pleaded facts as true and view them in light most favorable to the Plaintiffs. *Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 1994). Generally, Rule 12(b)(6) motions are viewed with disfavor and dismissal based thereon is rarely granted. *Thompson v. Goetzmann*, 337 F.3d 489, 495-94 (5th Cir. 2003). The Court's review of the Motion is limited to the Complaint and

documents incorporated into it by reference and any matter of which the Court may take judicial notice. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### IV. <u>Civil Conspiracy – Count 7</u>

The Individual Defendants argue that the Complaint does not allege that the Individual Defendants conspired ***with*** Frinzi to do anything, which they argue is essential with regard to a claim for civil conspiracy. The Trustee counters by arguing that he need only allege that the Individual Defendants conspired "***with respect to*** Frinzi's breaches of his fiduciary duties." ECF No. 13, at ¶ 9 (emphasis added). Further, the Trustee argues that he satisfied his burden by alleging the Individual Defendants "conspired ***to cause*** Frinzi to breach his fiduciary duties." *Id.* (emphasis added).

Civil conspiracy is a derivative tort, which means that liability for civil conspiracy depends on participation in an underlying tort. *Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 402 (5th Cir. 2013). Therefore, to adequately plead a claim for civil conspiracy, the plaintiff must allege both a claim for conspiracy and a claim for an underlying tort. *Id.* The elements of a civil conspiracy include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005). Here, the underlying tort the Plaintiffs claim is breach of fiduciary duty. "In Texas, '[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary duty existed between the plaintiff and the defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant." *Homoki*, 717 F.3d at 402-04 (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).

6

The "meeting of the minds" element requires parties' agreement "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995). Additionally, there must be a "a preconceived plan and unity of design and purpose." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 809 (S.D. Tex. 2009) (*quoting Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.)). Taking these elements together, "[a] conspiracy to defraud on the part of two or more persons means a common purpose, supported by concerted action to defraud, that each has the understanding that the other has that purpose." *Goldstein*, 113 S.W.3d at 779. To satisfy the meeting of the minds requirement, "there must be a preconceived plan and unity of design and purpose." *Id.* Likewise, the Supreme Court of Texas held that for a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the beginning of the agreement. See *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 867 (Tex. 1968). A co-conspirator must have knowledge of the object and purpose of the conspiracy. *Id.*

Here, the Trustee seeks to hold the Individual Defendants "jointly and severally liable with Frinzi for all damages awarded to Trustee and GNET for Frinzi's breaches of fiduciary duty." ECF No. 1 at ¶ 130. The problem that arises is that the Trustee never alleges that the Individual Defendants conspired **with Frinzi** to breach his fiduciary duties. Instead, the Trustee alleges that the Individual Defendants conspired amongst themselves **with respect to** Frinzi's breach of fiduciary duty. Nowhere in the Complaint does the Trustee allege that Frinzi was ever part of the actual conspiracy with the Individual Defendants. Therefore, the Trustee never alleges that there was a meeting of the minds between the Individual Defendants and Frinzi to breach his fiduciary duties. To have a conspiracy claim, the tortfeasor ***must be a part of the alleged conspiracy*** because a conspiracy requires "one or more unlawful, overt acts." See *Davis-Lynch, Inc. v. Moreno*, 667

7

F.3d 539, 553 (5th Cir. 2012), as revised (Jan. 12, 2012). Here, the overt, unlawful acts were allegedly committed by a third-party who is not alleged to have been a co-conspirator, Frinzi. Accordingly, the Court hereby dismisses the Plaintiffs' claim for civil conspiracy against the Individual Defendants with leave to replead.[3]

## V.    Fraud – Count 8

The Individual Defendants allege that the Trustee has not adequately pleaded a claim for fraud against Pinkhasova because the Trustee has not met his burden to plead that Pinkhasova "made a material misrepresentation" and that "Frinzi justifiably or reasonably relied on the representation." ECF No. 7. The Individual Defendants claim that the Trustee's allegations are contradictory because the Trustee claims that Pinkhasova made material misrepresentations but also claims that no reasonable executive in Frinizi's position would have acted on the representations. ECF No. 14. The Individual Defendants also assert that the Trustee's allegations are contradictory because he claims that Frinzi "reasonably relied" on the representations for the sake of the fraud cause of action but claims elsewhere in the petition that Frinzi "blindly" relied on Pinkhasova's representations without doing any due diligence with regard to the breach of fiduciary duty cause of action. *Id.*

The Trustee counters that he has adequately pleaded a claim for fraud. The Trustee alleges two misrepresentations were made by Pinkhasova in her letter to Frinzi: that there was a mandatory redemption obligation and that 18920 owned the Transaction Shares. ECF No. 1 at ¶ 133.

---

[3] The Trustee argues for the first time in the Response that his claim for conspiracy could also be construed as a claim for "knowing participation". The Trustee has not pleaded a claim for knowing participation in the Complaint. Therefore, the Court does not address any claim for knowing participation.

Furthermore, the Trustee asserts that he plausibly states a claim for Frinzi's justifiable reliance on the misrepresentations. ECF No. 13.

In Texas, the elements of common law fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party suffered damages thereby. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011). The specific elements at issue are whether the Trustee has sufficiently pleaded the material representation and the reliance elements for a viable claim for fraud. When determining whether a representation is material, the Court uses an objective test. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). A representation is material if the representation was important to the plaintiff in coming to a decision, such that a reasonable person would be induced to act upon and attach importance to the representation in making the decision. *Id.* The representation may be material even if it was not the only factor inducing the plaintiffs to make the decision or enter into the transaction, but the plaintiff must have relied on the misrepresentations. *Id.*

The crux is whether a reasonable person would attach importance to and would be induced to act upon a claim that a mandatory redemption right existed and that 18920 owned the shares. The Individual Defendants argue that the Trustee "expressly acknowledges" in the Complaint that "no reasonable executive in Frinzi's position would or should have been induced to send millions of dollars to 18920 based on the contents of Pinkhasova's demand letter." ECF No. 14 at 6; ECF No. 1 at ¶ 116. The Trustee counters that the test is whether a *reasonable* person would attach

9

importance to a representation and not whether it was reasonable for *Frinzi* subjectively to find it important. ECF No. 13 at ¶ 26.

For purposes of the Motion, the Court finds that both the representation that 18920 owned the shares and the existence of a mandatory redemption right are objectively material representations. There is no question that the existence of a right of redemption and ownership of the shares to be redeemed are material facts to the underlying demand. It is important to note that the Supreme Court of Texas has held that the representations simply need to be important to the decision-making process to be material; they do not need to be the *only* pieces of information relied upon. *See Barrow-Shaver*, 590 S.W.3d at 496.

A claim for fraud under Texas law also requires that the plaintiff show both actual and justifiable reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Justifiable reliance usually presents a question of fact. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018). As such, the reliance element is rarely fodder for a 12(b)(6) motion. But the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified. *Id.* In this inquiry, courts "must consider the nature of the [parties'] relationship and the contract." *Id.* In an arm's-length transaction, parties must exercise ordinary care for the protection of their own interests; a failure to do so is not excused by "mere confidence in the honesty and integrity of the other party." *Id.* Accordingly, a party cannot "blindly rely" on another's representation when the party's knowledge, experience, and background alert it to investigate the other's representations before acting in reliance on those representations. *Id.*

The Court finds that the Trustee adequately pleaded that Frinzi justifiably relied on Pinkhasova's letter. The Trustee stated in the Complaint that, "Goodman had told [Frinzi] that there

10

was a mandatory redemption right, and Zakharyayev, who Frinzi knew to be a lawyer, and who he knew to represent 18920, as well as Zakharyayev's wife, would not be making a fraudulent demand." *See* ECF No. 1 at ¶ 134. Although the Individual Defendants argue other allegations in the Complaint implicate that Frinzi honored the "non-existent mandatory redemption obligation, without any due diligence, review of documents, advice of counsel, or common sense," the Court is unpersuaded by the argument in the context of a motion to dismiss. ECF No. 14 at 7; ECF No. 1 at 116.

First, the Supreme Court of Texas has specifically held that a victim of fraud is generally under no duty to discover the truth by exercising proper care. *Koral Indus. v. Sec.-Conn. Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990). Further, even if the Trustee's claims for breach of fiduciary duty and conspiracy claims contradict his fraud claims, a plaintiff can plead alternative and inconsistent facts or remedies. The Fifth Circuit held in *Guy James Const. Co. v. Trinity Indus., Inc*, that a "party may plead alternative and inconsistent facts or remedies against several parties without being barred." 644 F.2d 525, 530 (5th Cir. 1981) (citing FED. R. CIV. P. 8, 20); *Bryan v. City of Dallas*, 188 F.Supp.3d 611, 619 (N.D. Tex. 2016) (citing FED. R. CIV. P. 8(d)(2)) ("the Federal Rules permit plaintiffs to plead alternative, inconsistent claims."). The Court finds that all of the allegedly contradictory facts appear in different claims, which are permitted to be pleaded in the alternative.[4]

Finally, the Individual Defendants argue that the Trustee fails to allege that Pinkhasova had personal knowledge that any of the representations contained in the redemption letter were false. ECF No. 7 at 8; ECF No. 14 at 8. The Trustee alleges in the Complaint that Zakharyayev knew

---

[4] Whether the Trustee can successfully prevail upon two causes of action on alternative facts is a decision on the merits and not before the Court today.

11

that the letter was inaccurate, and that this knowledge was imputed to his wife Pinkhasova (ECF No. 13 at ¶ 30; ECF No. 1 at ¶ 134); that Pinkhasova knew "that 18920 had not paid for, and therefore, did not own, the Transaction Shares" (ECF No. 1 at ¶ 134); and that, upon information and belief, Zakharyayev and Pinkhasova own and control 18920 (ECF No. 1 at ¶ 30). Pinkashova is an owner of and registered agent for 18920. In her letter, she makes two representations the Court finds material. Accepting all well-pleaded facts as true, the Court finds that the Trustee has sufficiently pleaded facts that show that Pinkhasova had either knowledge that the representations were false or made the representations recklessly and without knowledge of their truth. Therefore, the Court finds that the Trustee has sufficiently pleaded a claim for fraud and the Motion denied as to this count.

### VI.     Aiding and Abetting – Count 9

The Trustee alleges a claim for aiding and abetting against Mr. Zakharyayev in the Complaint. The Trustee has since conceded in both his Response and at the Hearing that a cause of action for aiding and abetting does not currently exist in Texas. Further, both the Fifth Circuit and the District Court for the Northern District of Texas have held without reservation that Texas law does not recognize a cause of action for aiding and abetting. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782 (5th Cir. 2018); *Cruden Bay Holdings, LLC v. Jezierski*, No. 3:21-CV-01170-E, 2022 WL 447080, at *5 (N.D. Tex. Feb. 14, 2022). Therefore, the Court hereby dismisses Count 9 for aiding and abetting without prejudice.

Based on the foregoing, it is hereby:

**ORDERED** that Count 7 of the Complaint for conspiracy is hereby dismissed with the right to replead; it is further

**ORDERED** that Count 9 of the Complaint for aiding and abetting is hereby dismissed without prejudice; it is further

**ORDERED** that the Motion is hereby **DENIED** with respect to Count 8 of the Complaint for fraud.

###END OF ORDER###