Davor Rukavina, Esq.
Tex. Bar No. 24030781
Thomas D. Berghman, Esq.
Tex. Bar No. 24082683
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
**MUNSCH HARDT KOPF & HARR P.C.**
500 N. Akard St., Ste. 4000
Dallas, Texas 75201
214-855-7500
drukavina@munsch.com
tberghman@munsch.com
jvasek@munsch.com

**COUNSEL FOR SCOTT M. SEIDEL,
CHAPTER 7 TRUSTEE**

### IN THE UNITES STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: § § | | |
| GOODMAN NETWORKS, INC., § § § | | Case No. 22-31641-mvl7 (Chapter 7) |
| Debtor. § | | |
| § SCOTT M. SEIDEL, TRUSTEE, *et al.*, § § | | |
| Plaintiff, § § | | |
| v. § | | Adv. No. 23-03072-mvl |
| § 18920 NW 11TH, LLC, *et al.*, § § | | |
| Defendants. § | | |

**TRUSTEE'S RESPONSE TO DEFENDANTS STEVEN
ZAKHARYAYEV'S AND EVELINA PINKHASOVA'S PARTIAL
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE:

      Scott M. Seidel, chapter 7 trustee (the "Trustee") for Goodman Networks, Inc. (the "Debtor"), files this his *Trustee's Response to Defendants Steven Zakharyayev's and Evelina*

*Pinkhasova's Partial Motion to Dismiss Plaintiffs' Amended Complaint*, in support of which he would respectfully show as follows:

## I. BACKGROUND

1. On August 5, 2023, the Trustee filed his *Original Compliant* (Dkt. No. 1), which sets forth claims and causes of action against 18920 NW 11th, LLC ("18920"), James Goodman ("Goodman"), James Frinzi ("Frinzi"), Steven Zakharyayev ("Zakharyayev"), Evelina Pinkhasova ("Pinkhasova"), People NQ, Inc. ("People"), JJC & People, LLC ("JJC"), and GDMN Family Investments 2, LLC ("GDMN"). Following the Court's ruling (Dkt. No. 21, the "Opinion" or "Op.") on a motion to dismiss by Zakharyayev and Pinkhasova (the "Movants"), on February 20, 2024, the Trustee filed his *Trustee's Amended Complaint* (Dkt. No. 23, the "Complaint" or "Compl.") against all the same defendants.

2. At a high level, the Complaint alleges Goodman sought to extract for himself whatever value the Debtor had left, knowing the Debtor was insolvent and was about to default on its secured bonds. Compl. ¶ 39. He sought advice from Frinzi, who suggested a stock sale involving non-existing redemption rights, and identified Zakharyayev as a potential purchaser to acquire the stock and exercise the non-existing redemption rights. *Id.* ¶¶ 40 – 41. Zakharyayev involved 18920, which he and his wife Pinkhasova owned and controlled. *See id.* ¶¶ 30, 41. Goodman and the Goodman Entities[1] owned stock in the Debtor, and Goodman and others concocted a scheme by which "(i) the Goodman Entities would transfer the Transaction Shares to 18920; (ii) 18920 would demand redemption of the Transaction Shares from the Debtor; and (iii) the Debtor would use cash and other assets to satisfy the (in fact non-existent) redemption demand." *Id.* ¶ 42.

---

[1] Capitalized terms not defined herein have the meaning attributed to them in the Complaint.

3. On March 9 and 10, 2022, the following events transpired in furtherance of this scheme **within a 24-hour period** (among other things):

- Various Goodman Entities and 18920 entered into share purchase agreements pursuant to which 18920 would buy 4,032,918 shares of the Debtor's stock for $12,372,656. Compl. ¶¶ 44-46. However, 18920 did not have the funds to close. Compl. ¶ 48.

- Pinkhasova, on behalf of 18920, made a demand to the Debtor purporting to exercise a nonexistent mandatory stock redemption right. Compl. ¶ 50. However, 18920 had not paid for the Transaction Shares and therefore did not own them. *Id.*

- Frinzi, on behalf of the Debtor agreed to settle the invalid redemption demand in exchange for the Debtor issuing a $50 million note to 18920. Compl. ¶ 51.

- The Debtor and 18920 entered into a Settlement Agreement to compromise the note, under which "(i) the Debtor would pay 18920 $14,500,000; (ii) the Debtor would assign to 18920 one-half of the AMRR Note (such half representing $22 million) (the 'Half AMRR Note'), (iii) the Debtor would assign to 18920 the LSU License; and (iv) the Debtor would assign to 18920 the Trademarks (the Trademarks, the LSU License and the Half AMRR Note, collectively, the 'Transferred Assets')." Compl. ¶ 54.

4. Then, on March 11 and 15, 2022, the Debtor and GNET transferred $13,474,075.00 to 18920, who turned around and transferred $10 million to the Goodman Entities, purportedly as payment under the stock purchase agreements. The most charitable way to characterize this transaction would be to describe it as akin to a leveraged buyout, which would constitute a fraudulent transfer in any event, even if one declined to consider all the other questionable circumstances described in the Complaint.

5. The Complaint therefore seeks, *inter alia*, to recover the Transferred Assets or their value under fraudulent transfer law, to hold Frinzi liable for breaching his fiduciary duties as an officer of the Debtor and GNET, and to hold Goodman, Zakharyayev, and Pinkhasova accountable for their participation in Frinzi's breaches and the benefit they derived therefrom.

6. On September 21, 2023, Zakharyayev and Pinkhasova (the "Movants") filed their second motion to dismiss, styled *Defendants Steven Zakharyayev and Evelina Pinkhasova's Partial Motion to Dismiss Plaintiffs' Amended Complaint* (Dkt. No. 28, the "MTD").

## II.   ARGUMENT & AUTHORITIES

7. The Fifth Circuit has aptly summarized the dismissal standard under rule 12(b)(6) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. The facts alleged must "be enough to raise a right to relief above the speculative level," but the complaint may survive a motion to dismiss even if recovery seems "very remote and unlikely." *Twombly*, 550 U.S. at 555–56, 127 S. Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). Thus, "the complaint must provide more than conclusions, but it 'need not contain detailed factual allegations.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011)).

*Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).

8. It bears emphasizing that, when considering a motion to dismiss under rule 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). "'All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor.'" *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) ("quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). Rule 12(b)(6) motions are viewed with disfavor and rarely granted. *Lormand*, 565 at 232. The Court should therefore "adhere to the Supreme Court's admonition that '[t]he plausibility standard is not akin to a 'probability

requirement' ….'" *See Innova Hosp. San Antonio*, 892 F.3d at 729 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)).

A. **THE TRUSTEE HAS ADEQUATELY PLED A CLAIM FOR KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY**

9. The Movants ask the Court to dismiss the Trustee's claim for their knowing participation in Frinzi's breach of fiduciary duty. "Under Texas law, 'where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.'" *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (quoting *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942)). "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Id.* (citing *Cox Tex. Newspapers, L.P. v. Wootten,* 59 S.W.3d 717, 721–22 (Tex. App. 2001)). The Movants only challenge elements (2) and (3). They do not dispute that Frinzi owed fiduciary duties to the Debtor and GNET.

10. With respect to the second element, whether the Movants *knew* Frinzi owed the Debtor and GNET fiduciary duties, they claim the Complaint does not make this allegation. The Movants' argument boils down to a criticism that the Complaint does not contain the phrase, "Zakharyayev and Pinkhasova knew about the fiduciary relationship." But even if it did contain that phrase, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. Rather, the proper inquiry is whether the Complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

11. The Complaint contains factual allegations from which the Court can reasonably infer that the Movants knew Frinzi owed fiduciary duties to the Debtor and GNET. The Complaint alleges that both Movants knowingly participated in Frinzi's breaches. Compl. ¶¶ 130-131. They could not have done that without knowing about the duties in the first place. The Court can also reasonably infer that people who own and control a company, Compl. ¶ 30, and came recommended to participate in a multimillion-dollar transaction, Compl. ¶ 40-41, are sophisticated enough to understand and recognize fiduciary duties. Zakharyayev is an attorney licensed to practice in New York and Florida, so he more than anyone should know what duties an officer owes to the corporation he or she manages. Compl. ¶ 29. And, the Movants knew that they were transacting with the Chief Executive Officer of the Debtor and of GNET, meaning the law imposes on them the knowledge that Frinzi owed fiduciary duties to these entities.

12. Regarding the third element, whether the Movants knew they were participating in Frinzi's breaches of his fiduciary duties, the Movants seem to suggest, without citing any authority, that the Trustee must plead an element of conspiracy—that they actually conspired or participated *with Frinzi* to breach his fiduciary duties—in order to plead claim for knowing participation. They also claim the Court already rejected the Trustee's argument that the Complaint states a claim for knowing participation based on this element. But the Court expressly noted in its opinion that: "The Trustee has not pleaded a claim for knowing participation in the Complaint. Therefore, the Court does not address any claim for knowing participation." Op. p. 8, n. 3. The Movants have cited no authority for the proposition that knowing participation cannot exist without overt conspiracy, which on its face is something more than participation.

13. Furthermore, the Movants' suggestion that the amended Complaint merely restates the prior conspiracy claim has no merit. The following allegations are brand new:

130. Zakharyayev knowingly participated in Frinzi's breaches of fiduciary duty. Zakharyayev, even if he believed that there was a mandatory redemption right, knew that Frinzi was breaching his fiduciary duties, both of care and of loyalty, especially given his knowledge as a licensed attorney. Among other things, Zakharyayev knew that the Debtor was insolvent and that Frinzi and Goodman were seeking a way to transfer large assets to Goodman on account of his otherwise worthless stock, at the expense of the Debtor, GNET, and their creditors. This violated both the duty of loyalty, since Frinzi was favoring Goodman at the expense of his companies, and also the duty of care even if Zakharyayev believed there was a mandatory right of redemption, because Zakharyayev knew that the metrics could not possibly be met to exercise the same and because Zakharyayev knew that Frinzi was engaging in a fraudulent transfer, itself tortious. Zakharyayev instigated, aided, and abetted these breaches of fiduciary duty by negotiating and papering the transaction with Frinzi.

131. Zakharyayev and Pinkhasova knowingly participated in Frinzi's breaches of fiduciary duty. In addition to the above with respect to Zakharyayev, both Zakharyayev and Pinkhasova: (i) knew that 18920 did not own, because it had not paid for, the Transaction Shares when they demanded, on behalf of 18920, payment on the alleged redemption right; (ii) knew that there was no basis in law or in fact for the $50 Million Note, as 18920 did not own the Transaction Shares even if they could have believed that there was a redemption right; (iii) knew that there was no basis for the Settlement Agreement and the transactions contemplated thereby, as 18920 did not own the Transaction Shares even if they could have believed that there was a redemption right; and (iv) knew that Frinzi was causing the Debtor and GNET to execute the foregoing and transfer the Half AMRR Note, the Transferred Assets, and the Cash Transfers when no obligation at all was owing from the Debtor or GNET to 18920.

132. Both Zakharyayev and Pinkhasova knew that, in authorizing all of the foregoing, Frinzi had undertaken no due diligence into whether 18920 even owned the Transaction Shares (such as by consulting with counsel, or consulting with American Stock Transfer, or even asking for any proof from Zakharyayev and Pinkhasova), much less whether there was a redemption right, and was acting to benefit Goodman, thus breaching his duties of care and loyalty. In other words, Zakharyayev and Pinkhasova knew that the whole purpose of the transaction was to benefit Goodman and themselves, using 18920 as an intermediary, by sucking cash and assets out of the Debtor and GNET, when 18920 had not even paid for the Transaction Shares or owned them, and that Frinzi was breaching his fiduciary duties by agreeing and by engaging in the transactions.

133. Zakharyayev and Pinkhasova instigated, aided, and/or abetted—and thereby knowingly participated in—these breaches of fiduciary duty by, among other things, making the fraudulent redemption demand, insisting on the subsequent settlement documents, and insisting on, and aiding in the transfer of, the Half AMRR Note, the Transferred Assets, and the Cash Transfers.

14. The Movants knew the Debtor was insolvent, Compl. ¶ 47, yet they also knew Frinzi would cause the Debtor to transfer millions of dollars to them, *see, e.g.,* Compl. ¶ 48; indeed, they incited him to do precisely that with their actions and their demands. Even if they believed there was a mandatory redemption right for the shares—which is negated by the Trustee's well-pled facts, *see* Compl. ¶¶ 71-72, 138—the fact that an officer of an insolvent company was transferring millions of dollars on account of equity would put any reasonable person on notice that the officer was breaching a fiduciary duty because: (i) insolvent companies do not pay on equity; and (ii) they knew that the ultimate recipient of the majority of the transfer was Goodman, an insider. *See* Compl. ¶¶ 130-33. In other words, they knew that the whole purpose of the transaction, and for which they were making millions of dollars to act as a "shill," was for an insolvent company to funnel money to an insider.

15. The Complaint more than adequately states a claim against the Movants for knowing participation in Frinzi's breaches of his fiduciary duties, so the Court should deny the MTD.

B. ZAKHARYAYEV IS NOT IMMUNE FROM LIABILITY

16. The Movants claim Zakharyayev is immune from suit based on the attorney-immunity defense. In support, they cite Texas law, but the Complaint clearly alleges that Zakharyayev is an attorney in New York and in Florida. They provide no analysis for which state's laws would apply. In New York, for example, an attorney does not have immunity with respect to his advice to a client when the attorney has a "personal interest" in the advice that he gives, or when there is "fraud, collusion, malice, or bad faith." *Beatie v. DeLong*, 164 A.D.2d 104, 109-110 (N.Y. App. 1990). Florida law appears to provide "judgmental immunity" of an attorney against a malpractice claim, and absolute immunity when participating in judicial proceedings, but

does not appear to have a generalized attorney immunity doctrine. *See, generally, Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 523-24 (Fl. App. 2017).

17. Additionally, and critically, while the Complaint references the fact that Zakharyayev is a licensed attorney partially to note that Zakharyayev knew or should have known of the nefarious nature of the transaction he was orchestrating and personally involved in, the Complaint does not allege that Zakharyayev was representing 18920 as its legal counsel. Nowhere does the Complaint allege that his liability "arises out of conduct Zakharyayev undertook in his capacity as an attorney for 18920," as the MTD suggests. *See* MTD at p. 9. Rather, the Complaint alleges that Zakharyayev was acting in a non-attorney role either individually or as the owner of 18920 and for personal benefit.

18. Furthermore, attorney immunity is an affirmative defense on which the attorney bears the burden of proving that his conduct was "part of the discharge of his duties to his client." *Cantey Hanger LLP v. Byrd*, 467 S.W.3d 477, 484 (Tex. 2015). Dismissal of a complaint under Rule 12(b)(6) based on an affirmative defense is appropriate "only if an affirmative defense or other bar to relief appears on the face of the complaint." *Garrett v. Commonwealth Mortg. Corp. of America*, 938 F.2d 591, 594 (5th Cir. 1991). Here, no such affirmative defense appears on the face of the Complaint because, as noted above, the Trustee has not even alleged that Zakharyayev was acting as an attorney for 18920 and within the scope of any attorney-client relationship with 18920. The Trustee will also add that, if and when Zakharyayev asserts any such attorney immunity affirmative defense, the Trustee will seek to pierce any attorney privilege based on the fraudulent nature of the transaction.

19. In any event, and to the extent that Texas law applies, the Fifth Circuit has summarized the applicable law as follows:

Under Texas law, attorney immunity is a "comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration ... that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.' " *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd)), reh'g denied (Sept. 11, 2015). The immunity aims "to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates.' " Id. (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.–Dallas 2000, pet. denied)). Generally, the immunity applies to "conduct ... involving 'the office, professional training, skill, and authority of an attorney.' " *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *3 (Tex. App.— Austin July 29, 2008, no pet.) (citations omitted). If an attorney shows that the conduct at issue was "part of the discharge of the [attorney's] duties in representing [the] client," immunity is appropriate. *Cantey*, 467 S.W.3d at 481 (quoting *Toles v. Toles*, 113 S.W.3d 899, 910–11 (Tex. App.–Dallas 2003, no pet.)).

On the other hand, "attorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging ... duties to [a] client.' " Id. at 482 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.–Houston Mar. 20, 2008, pet. denied) (mem. op. on reh'g)). For example, an attorney cannot avoid liability "for the damages caused by [the attorney's] participation in a fraudulent business scheme with [the] client, as 'such acts are entirely foreign to the duties of an attorney.' " Id. (quoting *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)).

Importantly, an attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense. *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 468 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); see also *Cantey*, 467 S.W.3d at 484 ("An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that [the] alleged wrongful conduct ... is part of the discharge of [the attorney's] duties to [the] client."). To meet this burden, the attorney must "conclusively establish that [the] alleged conduct was within the scope of [the attorney's] legal representation of [the] client." *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *3 (Tex. App.—Dallas Mar. 10, 2017, no. pet. h.); accord *Cantey*, 467 S.W.3d at 484. Although Texas courts occasionally grant attorney immunity at the motion to dismiss stage, in those cases, the scope of the attorney's representation—and thus entitlement to the immunity—was apparent on the face of the complaint. *See, e.g., Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 WL 164528, at *1, *7 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (granting immunity when the complaint specifically alleged that a law firm's wrongful actions occurred "during [the firm's] representation of" the employee in that suit and concluding that "[b]ecause the facts alleged by [the plaintiff] were sufficient to support the defense of immunity, [the firm] did not need to present further evidence in support of its motion").

*Kelly v. Nichamoff*, 868 F.3d 371, 374-75 (5th Cir. 2017).

20. In that case, the attorney-defendant filed a motion to dismiss based on immunity, and the Fifth Circuit affirmed the District Court's denial because the attorney had not established the scope of his representation nor that his wrongful conduct fell within that scope. *See id.* at 375-76. Here, the Complaint does not even allege the existence of an attorney-client relationship, much less the scope of one. Zakharyayev cannot, therefore, establish the attorney-immunity defense on the face of the pleadings.

21. The Fifth Circuit also noted that:

> Moreover, Kelly's complaint alleges that "Nichamoff received payments, not just for his fee for the [stock transfer] transaction, but additional payments, as a result of his participation in the conspiracy to defraud Plaintiff Kelly." Kelly also claims that the Defendants (including Nichamoff) "had a pecuniary interest in ... Kelly's acquisition of" Legacy stock. These contentions allege that Nichamoff was "participat[ing] in independently fraudulent activities," rather than merely representing a client's interests in a business transaction. *Hazen*, 2008 WL 2938823, at *3. While "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney[,]' " Texas courts have repeatedly warned that "[i]f a lawyer participates in independently fraudulent activities, [the lawyer's] action is 'foreign to the duties of an attorney.'" *Highland*, 2016 WL 164528, at *4, *5 (quoting *Cantey*, 467 S.W.3d at 483; *Alpert*, 178 S.W.3d at 406). This includes "an attorney who participates in a fraudulent business scheme with [the] client" and is thus "not protected by the doctrine because such acts are 'entirely foreign to the duties of an attorney' and 'not part of the discharge of an attorney's duties in representing a party.' " *Santiago*, 2017 WL 944027, at *3.

*Kelly v. Nichamoff*, 868 F.3d at 375-76. Here, the Complaint similarly alleges that Zakharyayev had a pecuniary interest in and personally benefitted from the transaction at issue, so dismissal is likewise unwarranted at this stage of the litigation.

### III. ALTERNATIVE MOTION FOR LEAVE TO AMEND

22. Alternatively, to the extent the Court determines the Trustee failed to plead any element of a cause of action with sufficient particularity, the Trustee requests leave to amend. Rule

15 provides: "[t]he court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). There is a bias in favor of granting leave to amend, and the Court should not deny leave to amend with a substantial reason. *E.g. Laruche Imports, Inc. v. APL Ltd.*, No. 11-3127, 2012 U.S. Dist. LEXIS 15731, *2 (S.D. Tex. Feb. 8, 2012). "Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable." *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, N.D. Tex. 2016) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted" (internal alterations omitted))). Accordingly, the Court should permit the Trustee to amend the Complaint to the extent necessary to meet applicable pleading standards.

## IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully request that the Court enter an order (A) denying the MTD; (B) granting leave to amend the Complaint to the extent the Court would otherwise be inclined to grant the MTD; and (C) providing the Trustee such other and further relief to which he is entitled at law or in equity.

RESPECTFULLY SUBMITTED this 2nd day of April, 2024.

**MUNSCH HARDT KOPF & HARR P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Tex. Bar No. 24030781
Thomas D. Berghman, Esq.
Tex. Bar No. 24082683
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
500 N. Akard St., Ste. 4000
Dallas, Texas 75201
214-855-7500
drukavina@munsch.com
tberghman@munsch.com
jvasek@munsch.com

**COUNSEL FOR SCOTT M. SEIDEL, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 2, 2024, a true and correct copy of this document (along with any attachments) was served via the Court's CM/ECF system on all parties entitled to such notice, including counsel for Steven Zakharyayev and Evelina Pinkhasova (jgolinkin@jlcfirm.com).

By: /s/ Davor Rukavina
Davor Rukavina, Esq.