## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| GOODMAN NETWORKS, INC., | § | Case No. 22-31641-mvl7 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 23-03072-mvl |
| | § | |
| 18920 NW 11TH, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### BRIEF IN SUPPORT OF TRUSTEE'S MOTION TO COMPEL WRITTEN
### DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS FROM
### 18920 NW 11TH, LLC, STEVEN ZAKHARYAYEV, AND EVELINA PINKHASOVA

Davor Rukavina, Esq.
Tex. Bar No. 24030781
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
**MUNSCH HARDT KOPF & HARR P.C.**
500 N. Akard St., Ste. 4000
Dallas, Texas 75201
214-855-7500
drukavina@munsch.com
jvasek@munsch.com

**COUNSEL FOR SCOTT M. SEIDEL, CHAPTER 7 TRUSTEE**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ...................................................................................................1

        A.      ALLEGATIONS IN THE COMPLAINT ...............................................1

        B.      BACKGROUND OF THE DISCOVERY DISPUTE .............................3

III.    ARGUMENTS AND AUTHORITIES...................................................................5

        A.      THE DEFENDANTS MUST IDENTIFY THE DOCUMENT(S)
                WITH THE ALLEGED REDEMPTION RIGHT .................................7

        B.      THE COURT SHOULD ORDER THE DEFENDANTS TO AMEND
                THE RESPONSES TO COMPLY WITH HELLER................................9

                i.      The Defendants Have Improperly Given Responses
                        "Subject to" Objections...............................................................10

                ii.     The Defendants have Improperly Objected Based on
                        Alleged Overbreadth...................................................................11

                iii.    The Defendants have Improperly Objected Based on
                        Alleged Undue Burden ...............................................................12

                iv.     The Defendants have Improperly Objected Based on
                        Alleged Irrelevance....................................................................12

                v.      The Defendants Have Improperly Objected Based on
                        Alleged Vagueness......................................................................13

        C.      THE COURT SHOULD OVERRULE THE DEFENDANTS'
                PRIVILEGE OBJECTIONS..................................................................15

        D.      THE COURT SHOULD ORDER 18920 TO GIVE COMPLETE
                ANSWERS TO INTERROGATORIES ................................................20

        E.      THE COURT SHOULD ORDER THE INDIVIDUAL DEFENDANTS
                TO RESPOND TO DISCOVERY IRRESPECTIVE OF WHETHER
                18920 MIGHT ALSO POSSESS RESPONSIVE INFORMATION ...................23

F.    THE COURT SHOULD ORDER THE DEFENDANTS TO
PRODUCE DOCUMENTS AND INFORMATION RELATED
TO SUBSEQUENT TRANSFERS ....................................................................24

G.    THE COURT SHOULD ORDER THE DEFENDANTS
TO CONDUCT AN APPROPRIATE INVESTIGATION ..................................29

IV.    REQUEST FOR SANCTIONS ........................................................................29

V.    PRAYER...........................................................................................................32

CERTIFICATE OF SERVICE ..................................................................................32

## **TABLE OF AUTHORITIES**

## **Cases**

*Advocare Int'l, L.P. v. Horizon Labs., Inc.*, 3:04-CV-1988-H,
    2006 WL 8437063, (N.D. Tex. Jan. 23, 2006) ...................................................15

*Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*,
    No. 2:18-CV-166-Z-BR, 2020 WL 520608 (N.D. Tex. Jan. 13, 2020) ..............9

*Colle v. Brazos Cty., Tex.*, 981 F.2d 237 (5th Cir. 1993) .......................................28

*Davidson v. Goord*, 215 F.R.D. 73 (W.D.N.Y. 2003) ..............................................24

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977) ........................16

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ................................................28

*Hansel v. Shell Oil Corp.*, 169 F.R.D. 303 (E.D. Pa. 1996) ...................................20

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) ...........................*Passim*

*Keybank Nat'l Ass'n v. Perkins Rowe Assocs.*, No. 09-497-JJB-SCR,
    2011 U.S. Dist. LEXIS 37791 (M.D. La. Apr. 6, 2011) .............................. 23-24

*La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR,
    2022 WL 1667687 (W.D. Tex. May 25, 2022) ..................................................19

*Lakeland Partners, LLC v. U.S.*, 88 Fed. Cl. 124 (Ct. Fed. Cl. 2009)....................20

*League of United Latin American Citizens v. Abbott*,
    342 F.R.D. 227 (W.D. Tex. 2022) .....................................................................19

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).....................................28

*OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476
    (N.D. Tex. 2016)...................................................................................................7

*Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830
    (E.D. Penn. 1962) ..............................................................................................19

*Seastrunk v. Entegris, Inc.*, No. 3:16-cv-2795-L, 2017 U.S. Dist.
LEXIS 206901 (N.D. Tex. Dec. 15, 2017)...........................................................7

*Sentis Group, Inc. v. Shell Oil Co.*, 763 F.3d 919 (8th Cir. 2014) ........................23

*Smythe v. Does 1 – 10*, CV 15-4801-R, 2015 WL 12819173
(C.D. Cal. Sept. 25, 2015)..................................................................................28

*Thormond v. Compaq Comput. Corp.*, 198 F.R.D. 475 (E.D. Tex. 2000) ..............19

*Upjohn Co. v. U.S.*, 449 U.S. 677 (1981) ...............................................................19

## Statutes and Rules

11 U.S.C. § 550..............................................................................................28

Tex. Bus. & Comm. Code § 24.008.................................................................29

Fed. R. Civ. P. 26 ..................................................................................*Passim*

Fed. R. Civ. P. 33 ........................................................................................9, 20

Fed. R. Civ. P. 34 ..............................................................................................7

Fed. R. Civ. P. 37 ..............................................................................6, 7, 20, 31

Fed. R. Evid. 401 ............................................................................................13

Fed. R. Bankr. P. 7037 ......................................................................................6

## Other Sources

8A Wright, Miller & Marcus, Federal Practice and Procedure,
§ 2177 (2d ed. 1994)..........................................................................................20

TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE:

Scott M. Seidel, chapter 7 trustee (the "Trustee") for Goodman Networks, Inc. (the

"Debtor"), files this his brief in support of his *Trustee's Motion to Compel Written Discovery*

*Responses and Production of Documents from 18920 NW 11th, LLC, Steven Zakharyayev, and*

*Evelina Pinkhasova* (the "Motion"), in support of which the Trustee would respectfully show as

follows:

## I.      INTRODUCTION

1.      The Trustee sued 18920 NW 11th, LLC, Steven Zakharyayev, and Evelina

Pinkhasova (the "Defendants"), among others, to recover for their fraud, knowing participation in

breaches of James Frinzi's fiduciary duties, and receipt of fraudulent transfers.  Those claims have

survived two motions to dismiss.  Now, the Defendants refuse to participate in discovery in good

faith.  Their written responses to the Trustee's interrogatories and requests for production violate

nearly every mandate in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014).  The defendants

have produced only 79 documents (many of which are duplicative) in a lawsuit involving millions

of dollars in damages.  The Defendants have failed to cure their deficiencies despite the Trustee

giving them the chance, so the Trustee requests that the Court compel the Defendants to comply

and award sanctions.

## II.      BACKGROUND[1]

### A.      ALLEGATIONS IN THE COMPLAINT

2.      On August 5, 2023, the Trustee filed his *Original Compliant* (Dkt. No. 1), which

sets forth claims and causes of action against 18920, Zakharyayev, Pinkhasova, James Goodman

---

[1] Concurrently herewith, the Trustee is filing his *Appendix in Support of Trustee's Motion to Compel Written Discovery Responses and Production of Documents from 18920 NW 11th, LLC, Steven Zakharyayev, and Evelina*

("Goodman"), James Frinzi ("Frinzi"), People NQ, Inc. ("People"), JJC & People, LLC ("JJC"), and GDMN Family Investments 2, LLC ("GDMN").  Following the Court's ruling (Dkt. No. 21) on a motion to dismiss by Zakharyayev and Pinkhasova , on February 20, 2024, the Trustee filed his *Trustee's Amended Complaint* (Dkt. No. 23, the "Complaint" or "Compl.") against all the same defendants.  Appx.001.

3.      At a high level, the Complaint alleges Goodman sought to extract for himself whatever value the Debtor had left, knowing the Debtor was insolvent and was about to default on its secured bonds.  Compl. ¶ 39, Appx.009.  He sought advice from Frinzi, who suggested a stock sale involving non-existing redemption rights, and identified Zakharyayev as a potential purchaser to acquire the stock and exercise the non-existing redemption rights.  *Id.* ¶¶ 40 – 41.  Zakharyayev involved 18920, which he and his wife Pinkhasova owned and controlled.  *See id.* ¶¶ 30, 41, Appx.007, 009.  Goodman and the Goodman Entities[2] owned stock in the Debtor, and Goodman and others concocted a scheme by which "(i) the Goodman Entities would transfer the Transaction Shares to 18920; (ii) 18920 would demand redemption of the Transaction Shares from the Debtor; and (iii) the Debtor would use cash and other assets to satisfy the (in fact non-existent) redemption demand."  *Id.* ¶ 42, Appx.010.

4.      On March 9 and 10, 2022, the following events transpired in furtherance of this scheme **within a 24-hour period** (among other things):

- Various Goodman Entities and 18920 entered into share purchase agreements pursuant to which 18920 would buy 4,032,918 shares of the Debtor's stock for $12,372,656.  Compl. ¶¶ 44-46. However, 18920 did not have the funds to close. Compl. ¶ 48, Appx.011.

---

*Pinkhasova* (the "Appendix"), which is incorporated herein by reference.  Citations to the Appendix take the following form: Appx.###.

[2] Capitalized terms not defined herein have the meaning attributed to them in the Complaint.

- Pinkhasova, on behalf of 18920, made a demand to the Debtor purporting to exercise a nonexistent mandatory stock redemption right. Compl. ¶ 50. However, 18920 had not paid for the Transaction Shares and therefore did not own them. *Id.*

- Frinzi, on behalf of the Debtor agreed to settle the invalid redemption demand in exchange for the Debtor issuing a $50 million note to 18920. Compl. ¶ 51, Appx.012.

- The Debtor and 18920 entered into a Settlement Agreement to compromise the note, under which "(i) the Debtor would pay 18920 $14,500,000; (ii) the Debtor would assign to 18920 one-half of the AMRR Note (such half representing $22 million) (the 'Half AMRR Note'), (iii) the Debtor would assign to 18920 the LSU License; and (iv) the Debtor would assign to 18920 the Trademarks (the Trademarks, the LSU License and the Half AMRR Note, collectively, the 'Transferred Assets')." Compl. ¶ 54, Appx.012.

5.    Then, on March 11 and 15, 2022, the Debtor and GNET transferred $13,474,075.00 to 18920, who turned around and transferred $10 million to the Goodman Entities, purportedly as payment under the stock purchase agreements. The most charitable way to characterize this transaction would be to describe it as akin to a leveraged buyout, which would constitute a fraudulent transfer in any event, even if one declined to consider all the other questionable circumstances described in the Complaint.

6.    The Complaint therefore seeks, *inter alia*, to recover the Transferred Assets or their value under fraudulent transfer law, to hold Frinzi liable for breaching his fiduciary duties as an officer of the Debtor and GNET, and to hold Goodman, Zakharyayev, and Pinkhasova accountable for their participation in Frinzi's breaches and the benefit they derived therefrom.

**B.    BACKGROUND OF THE DISCOVERY DISPUTE**

7.    On April 10, 2024, the Trustee served the following interrogatories and requests for production on the Defendants:

| Tab | Description | Appx. |
|-----|-------------|-------|
| B | *Trustee's First Set of Interrogatories to Defendant 18920 NW 11th LLC* | 032 |

| Tab | Description | Appx. |
|-----|-------------|-------|
| C | *Trustee's First Set of Requests for Production to Defendant 18920 NW 11th, LLC* | 052 |
| D | *Trustee's First Set of Interrogatories to Defendant Steven Zakharayayev* | 078 |
| E | *Trustee's First Set of Requests for Production to Defendant Steven Zakharayayev* | 096 |
| F | *Trustee's First Set of Interrogatories to Defendant Evelina Pinkhasova* | 117 |
| G | *Trustee's First Set of Requests for Production to Defendant Evelina Pinkhasova* | 134 |

8.     After the Trustee gave them additional time to respond, the Defendants served the

following responses on May 24, 2024:

| Tab | Description | Appx. |
|-----|-------------|-------|
| H | *Defendant 18920 NW 11th LLC's Objections and Responses to Trustee's First Set of Interrogatories* | 154 |
| I | *Defendant 18920 NW 11th, LLC's Objections and Responses to Trustee's First Set of Requests for Production* | 163 |
| J | *Defendant Steven Zakharayayev's Objections and Responses to Trustee's First Set of Interrogatories* | 175 |
| K | *Defendant Steven Zakharayayev's Objections and Responses to Trustee's First Set of Requests for Production* | 184 |
| L | *Defendant Evelina Pinkhasova's Objections and Responses to Trustee's First Set of Interrogatories* | 193 |
| M | *Defendant Evelina Pinkhasova's Objections and Responses to Trustee's First Set of Requests for Production* | 200 |

9.     On May 31, 2024, the Trustee's counsel transmitter a detailed letter to the

Defendants' counsel, outlining numerous deficiencies in their written responses and noting the

lack of any document production.  *See* Appx.208.  The letter gave the Defendants one week to cure

their deficiencies.  On June 3, 2024, the Defendants produced 79 documents, 77 of which they had

already produced to the petitioning creditors in early 2023, and only two of which were new.  Many

of the 79 documents are duplicative, and based on the copious bad-faith objections discussed

below, it appears the Defendants probably withheld many more.   Counsel conferred by videoconference on June 11, 2024, but to date, the Defendants have not amended their defective written responses not committed to making a complete document production.

### III.    ARGUMENTS AND AUTHORITIES

10.    Judge Horan's opinion in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), represents the definitive authority on responding to discovery in this district.   The District Court provided, *inter alia*, the following rules that govern written discovery responses:

- "Counsel should cease and desist from raising … free-standing and purportedly universally applicable 'general objections' in responding to discovery requests. Deploying these general objections in this manner is … inconsistent with the Federal Rules and is not warranted by existing law."

- "So-called boilerplate or unsupported objections—even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests—are likewise improper and ineffective and may rise (or fall) to the level of what the Fifth Circuit has described as an all-too-common example of the sort of 'Rambo tactics' that have brought disrepute upon attorneys and the legal system."

- "[T]he practice of responding to … documents requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure."

- "A party served with written discovery must fully answer each … document request to the full extent that it is not objectionable and affirmatively explain what portion of [a] … document request is objectionable and why, affirmatively explain what portion of the … document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive … documents have been withheld."

- "Accordingly, for example, if part or all of [a discovery request] is allegedly vague and ambiguous, the responding party, to comply with the Federal Rules, must, if possible, explain its understanding of the allegedly vague and ambiguous terms or phrases and explicitly state that its answer is based on that understanding."

- "A similar analysis applies to an objection to a request as being overbroad in its scope or as imposing an undue burden on the responding party to answer or respond. If a discovery request is overbroad, the responding party must, to comply with … Rule 34, explain the extent to which it is overbroad and answer or respond

to the extent that it is not—and explain the scope of what the responding party is answering or responding to."

- "Similarly, if answering or responding to a discovery request would impose an undue burden, the responding party must … properly substantiate that assertion and then should only answer or respond to the part or extent, if any, of the request that would not involve an undue burden."

*Heller*, 303 F.R.D. at 483-92.  During the past ten years, courts have cited this opinion 310 times, including 156 times in the Northern District of Texas alone.

11.     When a party fails to meet its discovery obligations, Federal Rule of Civil Procedure 37, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7037, provides in relevant part as follows:

(a) MOTION FOR AN ORDER COMPELLING DISCLOSURE OR DISCOVERY.

(1) *In General*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

\* \* \*

(3) *Specific Motions*.

\* \* \*

(B) *To Compel a Discovery Response*. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

\* \* \*

(iii) a party fails to answer an interrogatory submitted under Rule 33; or

(iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

\* \* \*

(4) *Evasive or Incomplete Disclosure, Answer, or Response*. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

Fed. R. Civ. P. 37 (a)(1)-(4).

12.     In 2015, Federal Rule of Civil Procedure 34 was amended in a manner that "effectively codifies" the *Heller* decision:

(B) *Responding to Each Item*.  For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection <u>with specificity the grounds for objecting</u> to the request, including the reasons.

(C) *Objections*.  <u>An objection must state whether any responsive materials are being withheld on the basis of that objection.</u>  An objection to part of a request must specify the part and permit inspection of the rest.

Fed. R. Civ. P. 34(b)(2)(B)-(C); *Seastrunk v. Entegris, Inc.*, No. 3:16-cv-2795-L, 2017 U.S. Dist. LEXIS 206901, *11-12 (N.D. Tex. Dec. 15, 2017) (quoting *OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016)) ("General or boilerplate objections are invalid, and '[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. Amended Federal Rule of Civil Procedure 34(b)(2) effectively codifies this requirement, at least in part: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.''").

13.     The Defendants' responses violate nearly each and every rule set forth in *Heller*, and the Trustee is entitled to clean responses that comply with the rules.  The Trustee is also entitled to production of any documents withheld on account of improper objections.

A.     <u>THE DEFENDANTS MUST IDENTIFY THE DOCUMENT(S) WITH THE ALLEGED REDEMPTION RIGHT</u>

14.     This adversary proceeding seeks to recover funds the Debtor paid out in response to a demand to redeem its stock.  The Defendants claim 18920 acquired shared of the Debtor's

Series A-1 preferred stock (defined in the Complaint as the Transaction Shares) under various

Share Purchase Agreements on or about March 9, 2022.  Compl. ¶¶ 44-46, Appx.010.  "On March

9, 2022, Pinkhasova, on behalf of 18920 as the 'owner of 4,032,918 Series A-1 Preferred Shares',

demanded redemption of the Transaction Shares."  Compl. ¶ 50, Appx.011-012.  "Such demand

states that, '[a]s you know, the Preferred Shares are subject to mandatory redemptions at their

liquidation value on a quarterly basis.'"  *Id.*

15.     Based on these allegations, the Trustee propounded the following interrogatories

and received the following responses:

> **INTERROGATORY NO. 6 [to 18920]**:  Identify each document or instrument, including any articles of incorporation, bylaws, shareholder agreement, resolution, or other governance document of the Debtor, which You assert or contend gave You any right or option of redemption with respect to the Transaction Shares or any securities of the Debtor as demanded in the Redemption Notice, including any of the Debtor's Series A-1 Preferred Stock, including by identifying the same in Your production to the Trustee in response to his Requests for Production served concurrently herewith.

> **RESPONSE**: 18920 objects to this request as overbroad and that this request seeks information not relevant nor reasonably anticipated to lead to the discovery of admissible evidence. Subject to the foregoing, 18920 would refer the Trustee to documents produced with 18920's responses to Trustee's requests for production.

> **INTERROGATORY NO. 9 [to 18920]**.  At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?"

> **RESPONSE**: 18920 relied on conversations it had with Frinzi and Goodman, and documents produced by Goodman as part of negotiating the Share Purchase Agreements, including but not limited to Stock Purchase Procedures, provided that indicated preferred shares were subject to mandatory redemptions.

> **INTERROGATORY NO. 12 [to Zakharyayev]**:  At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?"

> **RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure by the attorney client or work product doctrine.

Zakharyayev also objects that this information is better obtained through 18920. *See* 18920 Obj. & Resp. to Trustee's 1st Interrog. at Interrog. No. 9.

**INTERROGATORY NO. 7 [to Pinkhasova]:** At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?"

**RESPONSE:** Pinkhasova objects to this request to the extent it seeks information protected from disclosure by the attorney client or work product doctrine. Pinkhasova also objects that this information is more properly sought through 18920. *See* 18920 Obj. & Resp. to Trustee's 1st Interrog. at Interrog. No. 9.

16.     As an initial matter, none of these objections comply with *Heller*, so they have been waived. The privilege objections are particularly egregious. As discussed below, the attorney-client privilege and work-product doctrine do not apply to prevent discovery of the underlying facts. The Trustee disputes that a mandatory redemption right existed at all, so its alleged source is a key fact issue in this litigation. Nor is it sufficient to point the Trustee to *all* documents the Defendants have produced. The Defendants must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could …." Fed. R. Civ. P. 33(d)(1). The Court should compel the Defendants to answer these interrogatories and specifically identify the document they contend contains the mandatory redemption right they purported to exercise.

**B.     THE COURT SHOULD ORDER THE DEFENDANTS TO AMEND THE RESPONSES TO COMPLY WITH *HELLER***

17.     The Defendants made numerous unsubstantiated, boilerplate objections in violation of *Heller*, but general, boilerplate language prohibited by *Heller* does not preserve an objection. *See Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*, No. 2:18-CV-166-Z-BR, 2020 WL 520608, at *6 (N.D. Tex. Jan. 13, 2020) ("The objection is general, boilerplate language and does not preserve the relevancy objection."). The Defendants have therefore waived their objections based on overbreadth, undue burden, harassment, irrelevance, and vagueness, and they must

amend their responses to remove the objections.  In the event the Court is disinclined to find

waiver, then the Court should order the Defendants to amend their written responses to make them

compliant with *Heller*.

> ### *i.*    **The Defendants Have Improperly Given Responses "Subject to" Objections**

18.    The Defendants answered the following interrogatories and requests for production

"subject to" various objections:

| Defendant | Type | Nos. |
|---|---|---|
| 18920 | Interrogatory | 1, 3, 4, 6, 11, 12, 13, 19, 23, and 24 |
| | RFP | 1, 2, 3, 6, 8, 10, 12, 13,15, 16, 17, 18, 19, 20, 21, 22, 26, 29, 30, 31, 33, 34, 35, 36, 37, 39, and 43 |
| Zakharyayev | Interrogatory | 1, 2, 3, 5, 6, 7, 8, 11, 16, 17, 20, 21, 22, and 23 |
| | RFP | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 15, 16, 17, 19, and 20 |
| Pinkhasova | Interrogatory | 1, 2, 3, 6, 10, 19, and 21 |
| | RFP | 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, and 20 |

19.    As Judge Horan held in *Heller*, "responding to a document request or interrogatory

'subject to' and 'without waiving' objections is not consistent with the Federal Rules or warranted

by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law

or for establishing new law."  In other words, it arguably violates an attorney's obligation to certify

that a response or objection is "consistent with [the federal] rules and warranted by existing law or

by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing

new law …."  Fed. R. Civ. P. 26(g)(1)(B)(i).  It also "'preserves nothing and serves only to waste

the time and resources of both the Parties and the Court.'"  The Court should therefore overrule all

objections followed by a "subject to" answer and order the Defendants to produce responsive

documents and give responsive answers.

ii.     **_The Defendants have Improperly Objected Based on Alleged Overbreadth_**

20.     The Defendants objected to the following interrogatories and requests for production based on alleged overbreadth:

| Defendant | Type | Nos. |
|---|---|---|
| 18920 | Interrogatory | 1, 3, 4, 6, 11, 13, 14, 16, 18, and 23 |
| | RFP | 1, 2, 3, 4, 22, 23, 24, 26, 29, 32, and 35 |
| Zakharyayev | Interrogatory | 1, 2, 3, 4, 5, 6, 7, 8, 13, 14, 15, and 18 |
| | RFP | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, and 21 |
| Pinkhasova | Interrogatory | 8 and 9, |
| | RFP | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 15, 16, 17, 18, 19, and 20 |

21.     "If a discovery request is overbroad, the responding party must, to comply with Rule 33 or Rule 34, explain the extent to which it is overbroad and answer or respond to the extent that it is not—and explain the scope of what the responding party is answering or responding to." *Heller*, 303 F.R.D. at 488.   "A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive." *Id.* at 490. "This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.*

22.     Despite objecting to 73 interrogatories and requests for production as overbroad, the Defendants never once explained their objections as required by *Heller*.  The objections have therefore been waived, and the Court should overrule them and compel appropriate responses and production.

### iii.   *The Defendants have Improperly Objected Based on Alleged Undue Burden*

23.     The Defendants objected to the following interrogatories and requests for production based on alleged undue burden:

| Defendant | Type | Nos. |
|---|---|---|
| 18920 | Interrogatory | 1, 11, and 13 |
|  | RFP | 1 and 29 |
| Zakharyayev | Interrogatory | 1, 2, 3, and 23 |
|  | RFP | 19, 20, and 21 |

24.     As with objections to overbreadth, "if answering or responding to a discovery request would impose an undue burden, the responding party must … properly substantiate that assertion and then should only answer or respond to the part or extent, if any, of the request that would not involve an undue burden." *Heller*, 303 F.R.D. at 489.  These objections have been waived as well, and in any event they have no merit, so the Court should overrule them and compel appropriate responses and production.

### iv.   *The Defendants have Improperly Objected Based on Alleged Irrelevance*

25.     The Defendants objected to the following interrogatories and requests for production based on alleged irrelevance:

| Defendant | Type | Nos. |
|---|---|---|
| 18920 | Interrogatory | 1, 3, 4, 6, 14, 16, and 18 |
|  | RFP | 1, 2, 3, 4, 23, 24, 29, 32, and 35 |
| Zakharyayev | Interrogatory | 1, 2, 3, 4, 5, 6, 7, and 8 |
|  | RFP | 12, 13, 14, 19, 20, and 21 |
| Pinkhasova | RFP | 12 and 13 |

26.     The Federal Rules broadly allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case." Fed. R. Civ. P. 26(b)(1).  A document is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  "That a requested document or information will not be admissible or relevant to the merits of a claim or defense is not a proper objection to discovery of the document or information under the Federal Rules if the discovery request is reasonably calculated to lead to the discovery of admissible evidence." *Heller*, 303 F.R.D. at 489.

27.     "[I]f all or part of a discovery request seeks documents or information not even reasonably calculated to lead to the discovery of admissible evidence, the responding party should make a specific objection explaining how and to what extent the requested documents or information are not relevant and discoverable under the Rule 26(b) standard and stand on that objection as to the portion of the request that is so objectionable while specifically describing the portion, if any, of the request to which the responding party is answering or producing documents." *Id.* at 489-90.  The Defendants have not complied with this mandate, and under this broad standard, the discovery requested is relevant or reasonably calculated to lead to the discovery of admissible evidence.  The Court should therefore overrule these objections and compel answers and production.

### *v.     The Defendants Have Improperly Objected Based on Alleged Vagueness*

28.     The Defendants objected to the following interrogatories and requests for production based on alleged vagueness or ambiguity:

| Defendant | Type | Nos. |
|---|---|---|
| 18920 | Interrogatory | 12 and 13 |
| | RFP | 3, 26, 29, 30, 35, 36, 37, 39, 40, 41, 42, 43, 44, and 45 |
| Zakharyayev | Interrogatory | 11, 17, and 20 |

| Defendant | Type | Nos. |
|---|---|---|
| | RFP | 12 and 13 |
| Pinkhasova | Interrogatory | 18 |
| | RFP | 13 and 20 |

29.     As the Heller court explained, making such an objection carries with it numerous

obligations, none of which the Debtor satisfied:

> [I]f part or all of an interrogatory is allegedly vague and ambiguous, the responding
> party, to comply with the Federal Rules, must, if possible, explain its understanding
> of the allegedly vague and ambiguous terms or phrases and explicitly state that its
> answer is based on that understanding. If an entire interrogatory or document
> request is truly so vague and ambiguous that the responding party cannot
> understand its meaning and what information it seeks, the party should stand on its
> objection and provide no answer at all or promise no production of responsive
> documents on the ground that the responding party simply cannot do so based on
> the discovery request's wording. But making an objection to a request as vague and
> ambiguous, without more, and then fully answering the interrogatory or promising
> production of all documents responsive to the request "subject to" the vagueness
> and ambiguity objection betrays that the objection was made reflexively and
> without a factual basis.

*Heller*, 303 F.R.D. at 488 (citations omitted).

30.     Indeed, as if to drive home the point, the Court effectively reiterated these

obligations again:

> "The party objecting to discovery as vague or ambiguous has the burden to show
> such vagueness or ambiguity."  "A party objecting on these grounds must explain
> the specific and particular way in which a request is vague."  The responding party
> "should exercise reason and common sense to attribute ordinary definitions to terms
> and phrases utilized in interrogatories.  If necessary to clarify its answers, the
> responding party may include any reasonable definition of the term or phrase at
> issue."

*Heller*, 303 F.R.D. at 491 (citations omitted).  Further, "[i]f a party believes that the request is

vague, that party [should] attempt to obtain clarification prior to objecting on this ground." *Heller*,

303 F.R.D. at 491–92 (citations omitted).

31.     The Defendants did not comply with these obligations, so the Court should overrule their objections.  Even if the Court were inclined to give the Defendants an opportunity to provide answers that comply with *Heller*, none of the discovery requests in question are in fact vague or ambiguous in any way.

## C.     THE COURT SHOULD OVERRULE THE DEFENDANTS' PRIVILEGE OBJECTIONS

32.     The Defendants have invoked various privileges in response to 85 interrogatories and requests for production, but they have not produced a privilege log.  In Federal court, the obligation to produce a log arises automatically, without the need for a request:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  The Court should compel the Defendants to produce a privilege log immediately.

33.     Moreover, "[t]he burden is on the party asserting the privilege to demonstrate how each communication satisfies [the] elements" of the privilege.  *Advocare Int'l, L.P. v. Horizon Labs., Inc.*, 3:04-CV-1988-H, 2006 WL 8437063, *3 (N.D. Tex. Jan. 23, 2006).[3]  "A general allegation of privilege is insufficient to meet that burden."  *Id.*  "Rather, the proponent must make a clear showing as to each item objected to, and 'provide sufficient facts by way of detailed affidavits or other evidence to enable the Court to determine whether the privilege exists."  *Id.*

---

[3] "The elements of the attorney-client privilege [in Texas, for example,] are: (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived."  *Id.* at *2.

34.     It is not enough that Zakharyayev happens to be an attorney.  *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.").  There is no reason to believe Zakharyayev was actually, formally engaged by 18920 or Pinkhasova for the purpose of providing legal services as opposed to being involved in the transaction in some other capacity—namely as an interested business owner.  *See id.* ("the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, **not in some other capacity**" (emphasis added)).  The Defendants have not, for example, produce an engagement letter between 18920 or Pinkhasova and Zakharyayev.

35.     The Defendants wholly failed to meet their burden of proof on their privilege claims, and that failure is particularly problematic with respect to their interrogatory responses.  Pinkhasova and Zakharyayev, for example, refused to answer the following interrogatories based, at least in part, on an assertion of privilege (emphasis added):

| Defendant | No. | Interrogatory |
|---|---|---|
| Pinkhasova | 5 | **At the time of the Redemption Notice**, what was the **factual basis** for the statement in the Redemption Notice that 18920 NW 11th LLC, (the "Shareholder") is owner of 4.032,918 Series A-1 Preferred Shares" as of the date of the Redemption Notice? Your answer should address whether, by that date, 18920 had paid for the Transaction Shares, whether You believed that it needed to pay for the same in order to then own the same, why You may have believed that it need not have paid for the same in order to then own the same, and whether any steps had then been taken for 18920 to take any action to evidence its ownership of the Transaction Shares and what any such action would have been and whether and when it was taken. |
| Pinkhasova | 6 | **At the time of the Redemption Notice**, how did You **believe or understand** that 18920 paid, or would pay, for the Transaction Shares, and when it would do so or when it had done so? |

| Defendant | No. | Interrogatory |
|-----------|-----|---------------|
| Pinkhasova | 7 | **At the time of the Redemption Notice**, what was the **factual basis** for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?" |
| Pinkhasova | 8 | Explain what steps **You took**, including any due diligence **You undertook**, to state in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis," including by identifying any documents **You reviewed** or relied on to state the same, and including any communications **You reviewed, made, had, were given, or You relied on**, to state the same. Identify any such documents or communications in Your production to the Trustee's Requests for Production served concurrently herewith. |
| Pinkhasova | 9 | **At the time of the Redemption Notice**, did You **believe or understand** that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis," as stated therein, and, if You so believed, why did You so believe? |
| Pinkhasova | 11 | **At the time of the Redemption Notice**, what did You **believe or understand** was the "liquidation value [ of the Preferred Shares] on a quarterly basis" as stated in the Redemption Notice? |
| Pinkhasova | 12 | What was the **factual basis** for any **belief or understanding** of Yours as answered in response to Interrogatory No. 11. |
| Pinkhasova | 13 | **At the time of the Redemption Notice**, did you **believe or understand** that the Debtor had the funds necessary to pay the "mandatory redemptions" as stated in the Redemption Notice? |
| Pinkhasova | 14 | If Your answer to Interrogatory No. 13 is "yes" in whole or in part, then explain the **factual basis** of Your **belief or understanding**. If Your answer to Interrogatory No. 13 is "no" in whole or in part, then explain what **belief or understanding** You had as to how the Debtor would pay or satisfy the "mandatory redemption.'" |
| Pinkhasova | 15 | **At the time of the Redemption Notice**, did You have a **belief or understanding** as to the Debtor's solvency and, if so, state the **factual basis** for any such belief or understanding. As used herein. "solvency" means both that the assets of the Debtor exceeded its liabilities, including any debt payable on the Redemption Notice, and that the Debtor was paying its debts as they became due, including any debt payable on the Redemption Notice. |
| Pinkhasova | 17 | **As of the date of the Settlement Agreement**, what value did You **believe or understand** that 18920 gave to the Debtor for the Settlement Agreement, or what the "value received"' stated in the Promissory Note or "good and valuable consideration" stated in the Settlement Agreement was? |

| Defendant | No. | Interrogatory |
|---|---|---|
| Zakharyayev | 10 | **At the time of the Redemption Notice**, what was the **factual basis** for the statement in the Redemption Notice that "18920 NW 11th LLC, (the "Shareholder") is owner of 4,032,918 Series A-1 Preferred Shares" as of the date of the Redemption Notice? Your answer should address whether, by that date, 18920 had paid for the Transaction Shares, whether You **believed** that it needed to pay for the same in order to then own the same, why You may not have **believed** that it need not have paid for the same in order to then own the same, and whether any steps had then been taken for 18920 to take any action to evidence its ownership of the Transaction Shares and what any such action would have been and whether and when it was taken. |
| Zakharyayev | 12 | **At the time of the Redemption Notice**, what was the **factual basis** for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?" |
| Zakharyayev | 13 | Explain what steps **You took**, including any due diligence **You undertook**, to review whether the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis," as stated in the Redemption Notice, including by identifying any documents **You reviewed or relied on** to state the same. and including any communications **You reviewed, made, had, were given, or You relied on**, to state the same. Identify any such documents or communications in Your production to the Trustee's Requests for Production served concurrently herewith. |
| Zakharyayev | 14 | **At the time of the Redemption Notice**, did You **believe or understand** that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis," as stated therein, and, if You so believed, why did You so believe? |
| Zakharyayev | 15 | **At the time of the Redemption Notice**, what did You **believe or understand** was the "liquidation value [of Preferred Shares] on a quarterly basis" as stated in the Redemption Notice, and why? |
| Zakharyayev | 18 | **At the time of the Redemption Notice**, did You have a **belief or understanding** as to the Debtor's solvency and, if so, state the **factual basis** for any such belief or understanding. As used herein, "solvency" means both that the assets of the Debtor exceeded its liabilities, including any debt payable on the Redemption Notice, and that the Debtor was paying its debts as they became due, including any debt payable on the Redemption Notice. |
| Zakharyayev | 19 | **As of the date of the Settlement Agreement**, what value did You **believe or understand** that 18920 gave to the Debtor for the Settlement Agreement or what the "value received" stated in the Promissory Note was? |

36.     To the extent the Defendants assert the attorney-client privilege to avoid answering these interrogatories, it plainly does not apply because:

> "[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

*Upjohn Co. v. U.S.*, 449 U.S. 677, 685-86 (1981) (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D. Penn. 1962)).

37.     Furthermore, "facts within the client's knowledge are not privileged, 'even if the client learned those facts though communications with counsel.'"  *League of United Latin American Citizens v. Abbott*, 342 F.R.D. 227, 235 (W.D. Tex. 2022) (quoting *Thormond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 481 (E.D. Tex. 2000), and citing *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, *7 (W.D. Tex. May 25, 2022)). Likewise, questions that "probe [a party's] understanding and personal beliefs … do not run afoul of privilege protections." *League of United Latin American Citizens v. Abbott*, 342 F.R.D. at 236. Each of these interrogatories plainly seeks facts or beliefs, so the attorney-client privilege does not apply.

38.     To the extent the defendants rely on the work-product doctrine to avoid answering these interrogatories, it does not apply either.  The Federal work-product doctrine provides: "[o]rdinarily, a party may not discover documents and tangible things **that are prepared in anticipation of litigation or for trial** by or for another party or its representative …."  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).  But the interrogatories plainly seek facts and beliefs that existed as of March 9 or 10, 2022, seventeen months before the Trustee filed his original complaint. Unless the Defendants are willing to acknowledge they knew their conduct was wrongful and

would inevitably spawn litigation, and that they undertook the entire transaction with an expectation of getting sued, then there is no basis to claim the protections of the work-product doctrine (and even then, any claim would be dubious).

39.     The Court should overrule the Defendants' privilege objections and compel them to answer interrogatories and produce responsive documents.

**D.   THE COURT SHOULD ORDER 18920 TO GIVE COMPLETE ANSWERS TO INTERROGATORIES**

40.     As Judge Horan observed in *Heller*, "Rule 33(b)(3) requires that the responding party must answer each interrogatory 'to the extent it is not objected to.'" *Heller*, 303 F.R.D. at 487) (citing Fed. R. Civ. P. 33(b)(3)). "The responding party 'must provide true, explicit, responsive, complete, and candid answers to interrogatories.'" *Lakeland Partners, LLC v. U.S.*, 88 Fed. Cl. 124, 132 (Ct. Fed. Cl. 2009) (quoting *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996)). "Interrogatories 'should be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry.'" *Id.* (quoting 8A Wright, Miller & Marcus, Federal Practice and Procedure, § 2177 (2d ed. 1994)). Furthermore, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

41.     18920 did not object to any of the following interrogatories (and therefore waived any objections) but nevertheless failed to provide adequate answers:

> **INTERROGATORY NO. 2.**   Identify each and every Transfer made by the Debtor and GNET to You, including the transfer of any funds, including into any bank account held in Your name or held for Your benefit or to which You had access. For each such Transfer that is a transfer of funds, state the transferor, the transferor's bank, the transferor's bank account, the date of the transfer, the method of the transfer, the name of the transferee's bank, the transferee's bank account, and the amount of such transfer.
>
> **RESPONSE:** 18920 received some of, or partial payment relating to, the items provided for in the Settlement Agreement. See the Settlement Agreement produced

by 18920; the February 10, 2023 deposition testimony of its corporate representative, Steven Zakharyayev, at 59:1–60:2, 62:8–64:5.

- To date, 18920 has only produced 79 documents, many of which are duplicative. Furthermore, it is unlikely that a settlement statement will provide all the information this interrogatory requests.

**INTERROGATORY NO. 7.** Explain all investigation, analysis, examination, or due diligence undertaken by You or undertaken on Your behalf in entering into the Purchase Agreements and in determining that any right or option of redemption existed with respect to the Transaction Shares or any securities of the Debtor as demanded in the Demand Notice, including any of the Debtor's Series A-1 Preferred Stock, including by identifying any persons involved in any such investigation, identifying communications you may have had with any person regarding the same, identifying any analysis of the same performed by any person, and identifying any document reviewed or relied on in any such investigation in Your production to the Trustee in response to his Requests for Production served concurrently herewith.

**RESPONSE:** Counsel for 18920 had several conversations with James Goodman, Goodman Network's former attorney and in-house counsel, and Frinzi. 18920 also reviewed shareholder agreements produced by Goodman and his attorneys with respect to ownership in the shares.

- This answer provides inadequate detail to answer the interrogatory fully. It does not identify individuals by name; it does not identify communications by date and participants; it does not disclose any analysis; and it does not specifically identify any documents.

**INTERROGATORY NO. 8.** At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that "18920 NW 11th LLC, (the "Shareholder") is owner of 4,032,918 Series A-1 Preferred Shares"? Your answer should address whether, by that date, 18920 had paid for the Transaction Shares, whether You believed that it needed to pay for the same in order to then own the same, why You may have believed that it need not have paid for the same in order to then own the same, and whether any steps had then been taken for 18920 to take any action to evidence its ownership of the Transaction Shares and what any such action would have been and whether and when it was taken.

**RESPONSE:** The Share Purchase Agreements with the various Goodman entities entitled 18920 to the preferred shares which carried mandatory redemption rights. 18290 initiated payment of $10 million to Goodman Networks around March 9 or 10, 2022.

- This answer does not address the questions posed in the interrogatory. It does not definitively state whether 18920 had actually paid for the shares; it does not state whether 18920 believed in need to pay for the shares in order to own them;

it does not state whether any steps had then been taken for 18920 to take any action to evidence its ownership of the shares; and it does not state what any such action would have been and whether and when it was taken.

**INTERROGATORY NO. 9.** At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?"

**RESPONSE:** 18920 relied on conversations it had with Frinzi and Goodman, and documents produced by Goodman as part of negotiating the Share Purchase Agreements, including but not limited to Stock Purchase Procedures, provided that indicated preferred shares were subject to mandatory redemptions.

- On its face, this answer is incomplete by virtue of include the phrase "included but not limited to".

**INTERROGATORY NO. 10.** Explain all investigation, analysis, examination, or due diligence undertaken by You or undertaken on Your behalf prior to sending the Redemption Notice and with respect to the right or option of redemption referenced therein, including by identifying any persons involved in any such investigation, identifying communications you may have had with any person regarding the same, identifying any analysis of the same performed by any person, and identifying any document reviewed or relied on in any such investigation in Your production to the Trustee in response to his Requests for Production served concurrently herewith.

**RESPONSE:** 18920's counsel had several communications with Frinzi and Goodman, and reviewed documents produced by Goodman as part of negotiating the Share Purchase Agreements, including but not limited to, Stock Purchase Procedures provided that indicated preferred shares were subject to mandatory redemptions.

- On its face, this answer is incomplete by virtue of include the phrase "included but not limited to".  It also does not identify individuals by name; it does not identify communications by date and participants; it does not disclose any analysis; and it does not specifically identify any documents.

**INTERROGATORY NO. 15.** What value or return consideration did You provide to the Debtor or GNET for the Redemption Notice, Promissory Note, Settlement Agreement, and any of the transfers or payments the subject of Interrogatory No. 2? Your answer should explain both the nature and the amount of such value, and the date(s) on which it was given.

**RESPONSE:** 18920 paid $10 million for the preferred shares pursuant to the Share Purchase Agreements with the three Goodman entities.

- This answer only purports to address what consideration 18920 gave for the shares. It does not address what consideration 18920 gave for Redemption Notice, Promissory Note, Settlement Agreement, and any of the transfers or payments the subject of Interrogatory No. 2. Nor does it explain both the nature and the amount of such value, and the date(s) on which it was given.

**INTERROGATORY NO. 17.** Was the Promissory Note ever signed? If so, but a signed version thereof is not produced to the Trustee pursuant to his Requests for Production served concurrently herewith, explain Your understanding of what happened to the signed version of the same.

**RESPONSE:** Yes. The Promissory Note was signed. *See* the February 10, 2023 deposition testimony of 18920's corporate representative, Steven Zakharyayev, at 38:14–21, 39:1–15, 39:21–40:2.

- To date, 18920 has not produced a signed copy of the Promissory Note, so it is unclear whether more information is required in response to the latter part of this inquiry.

42.      These answers are insufficient for the reasons stated above, so the Court should compel the Defendants to give complete answers.

**E.      THE COURT SHOULD ORDER THE INDIVIDUAL DEFENDANTS TO RESPOND TO DISCOVERY IRRESPECTIVE OF WHETHER 18920 MIGHT ALSO POSSESS RESPONSIVE INFORMATION**

43.      In response to numerous interrogatories and requests for production, including the interrogatories they refused to answer based on privilege, Zakharyayev and Pinkhasova assert that discovery would be better obtained through 18920. But they do not "possess the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *See Sentis Group, Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014) (citing Fed. R. Civ. P. 26(b)(1)). Generally speaking, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). Zakharyayev and Pinkhasova "cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case." *Sentis Group v. Shell Oil* 763 F.3d at 925; *cf. Keybank Nat'l Ass'n v.*

*Perkins Rowe Assocs.*, No. 09-497-JJB-SCR, 2011 U.S. Dist. LEXIS 37791, at *7 (M.D. La. Apr.

6, 2011) (citing *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003)) ("a party may not simply

refuse to respond to a party's discovery request on the grounds that the party already has the

information.").

44.     The Court should overrule this objection and compel Zakharyayev and Pinkhasova

to answer the relevant interrogatories and produce responsive documents.

**F.     THE COURT SHOULD ORDER THE DEFENDANTS TO PRODUCE DOCUMENTS AND
INFORMATION RELATED TO SUBSEQUENT TRANSFERS**

45.     The Defendants have refused to produce documents and information related to

subsequent transfers pursuant to the following requests and responses:

> **REQUEST FOR PRODUCTION NO. 13 [to Zakharyayev]**.  Any tax Document
> from 18920 to You, including any Kl, K2, W2. or other tax form, and all
> Communications regarding or related to the same.

> **RESPONSE**: Zakharyayev objects to this request to the extent it seeks documents
> protected from disclosure by the attorney client or work product privileges.
> Zakharyayev also objects to this request as overbroad and that it lacks specificity
> as to the documents requested. Zakharyayev further objects to this request as it
> seeks documents that are not relevant nor reasonably calculated to lead to the
> discovery of admissible evidence.

> **REQUEST FOR PRODUCTION NO. 14 [to Zakharyayev]**.  All Documents
> and Communications related to, regarding, or referencing any Transfer from 18920
> to You at any time since March 1, 2022, including any loan, distribution, dividend,
> or payment.

> **RESPONSE**: Zakharyayev objects to this request to the extent it seeks documents
> protected from disclosure by the attorney client or work product privileges.
> Zakharyayev further objects 7 to this request as it seeks documents that are not
> relevant nor reasonably calculated to lead to the discovery of admissible evidence.

> **REQUEST FOR PRODUCTION NO. 18 [to Zakharyayev]**.  All Documents
> and Communications reflecting, referring to, regarding, calculating, or evidencing
> any investment, acquisition, or other Transfer made by 18920 from any of the funds
> paid pursuant to the Redemption Notice, Promissory Note, or Settlement
> Agreement.

**RESPONSE**: Zakharyayev objects to this request to the extent it seeks documents protected from disclosure by the attorney client or work product privileges. Zakharyayev also objects to this request as overbroad. Zakharyayev also objects to the extent the request seeks documents outside of his possession, custody, or control, that are better suited to obtain through requests to 18920. See 18920 Obj. & Resp. to Trustee's 1st RFPs at RFP No. 25.

**REQUEST FOR PRODUCTION NO. 13 [to Pinkhasova]**.  Any tax Document from 18920 to You, including any Kl, K2, W2. or other tax form, and all Communications regarding or related to the same.

**RESPONSE**: Pinkhasova objects to this request to the extent it seeks documents protected from disclosure by the attorney client or work product privileges. Pinkhasova also objects to this request as overbroad and that it lacks specificity as to the documents requested. Pinkhasova further objects to this request as it seeks documents that are not relevant nor reasonably anticipated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 14 [to Pinkhasova]**.  All Documents and Communications related to, regarding, or referencing any Transfer from 18920 to You at any time since March 1, 2022, including any loan, distribution, dividend, or payment.

**RESPONSE**: Pinkhasova objects to this request to the extent it seeks documents protected from disclosure by the attorney client or work product privileges.

**REQUEST FOR PRODUCTION NO. 19 [to Pinkhasova]**.  All Documents and Communications reflecting, referring to, regarding, calculating, or evidencing any investment, acquisition, or other Transfer made by 18920 from any of the funds paid pursuant to the Redemption Notice, Promissory Note, or Settlement Agreement.

**RESPONSE**: Pinkhasova objects to this request to the extent it seeks documents protected from disclosure by the attorney client or work product privileges. Pinkhasova also objects to this request as overbroad. Pinkhasova also objects to the extent the request seeks documents outside of her possession, custody, or control, that are better suited to obtain through requests to the 18920 entity. Subject to the foregoing, Pinkhasova does not have any of these documents in her individual capacity. See documents produced by 18920.

**INTERROGATORY NO. 1 [to 18920]**.   Identify all of the bank accounts currently held in Your name or for Your benefit and any such bank accounts held at any time since October 1, 2021. The foregoing includes the name of the bank, the account number, and the holder of the account.

**RESPONSE**: 18920 objects to this request as overbroad, unduly burdensome, and harassing. 18920 also objects to this request to the extent it seeks documents not relevant nor reasonably anticipated to lead to the discovery of admissible evidence.

Subject to the foregoing, 18920 had a single Bank of America account, which was ultimately closed by Bank of America and for which there is no longer access.

**INTERROGATORY NO. 14 [to 18920]**.  What did You do with any funds the subject of Interrogatory No. 2 and No. 13 if any portion thereof is no longer held by You? Your answer should include: any payments or Transfers made pursuant to any of the Purchase Agreements, including the dates and amounts thereof and the transferees thereof; any payments or Transfers made to acquire any assets or property, including investments, from such funds. including the dates of any such transfers, the amounts thereof, and the purpose thereof; and any Transfer of any such funds from You to Zakharyayev or Pinkhasova, including the dates of any such transfers, the amounts thereof, and the purpose thereof.

**RESPONSE**: 18920 objects to this request as overly broad. 18920 also objects to this request in that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 16 [to 18920]**.  Have you sold, transferred, or otherwise conveyed any property of Yours at any time since March 9, 2022, outside of the ordinary course of business, and. if so. when. to whom, for what, and why?

**RESPONSE**: 18920 objects to this request as overly broad. 18920 also objects to this request in that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 18 [to 18920]**.  Have you pledged any of Your property as collateral for any loan or obligation at any time and, if so, when, to whom, for what, and why?

**RESPONSE**: 18920 objects to this request as overly broad and vague as to the information requested. 18920 also objects to this request in that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 1 [to 18920]**.  Any and all bank statements for any bank accounts held in Your name or for Your benefit since January 1, 2021 through the present.

**RESPONSE**: 18920 objects to this request as overbroad, unduly burdensome, and harassing. 18920 also objects to this request to the extent it seeks documents not relevant nor reasonably anticipated to lead to the discovery of admissible evidence. Subject to the foregoing, none.

**REQUEST FOR PRODUCTION NO. 3 [to 18920]**.  Each of your Financial Documents for any period of time beginning January 1, 2021.

**RESPONSE**: 18920 objects to this request as overbroad and lacks specificity. 18920 also objects to this request to the extent it seeks documents not relevant nor

reasonably anticipated to lead to the discovery of admissible evidence. Subject to the foregoing, none.

**REQUEST FOR PRODUCTION NO. 4 [to 18920]**. Each tax return filed by You at any time since January 1, 2021 with any taxing authority, including any Kl, K2. or W2 issued by You.

**RESPONSE**: 18920 objects to this request as overbroad. 18920 also objects to this request to the extent it seeks documents not relevant nor reasonably anticipated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 23 [to 18920]**.  All Documents and Communications relating to, referring to. or evidencing any Transfer by You of any property to Zakharyayev since January 1, 2021, including by way of loan, dividend, distribution, or reimbursement.

**RESPONSE**: 18920 objects to this request to the extent it seeks documents that are protected from disclosure by the attorney client, work product, common interest, or joint defense privileges. 18920 also objects to this request as overbroad. 18920 also objects that this request seeks document that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 24 [to 18920]**.  All Documents and Communications relating to, referring to, or evidencing any Transfer by You of any property to Pinkhasova since January 1, 2021, including by way of loan, dividend, distribution, or reimbursement.

**RESPONSE**: 18920 objects to this request to the extent it seeks documents that are protected from disclosure by the attorney client, work product, common interest, or joint defense privileges. 18920 also objects to this request as overbroad. 18920 also objects that this request seeks document that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 25 [to 18920]**.  All Documents and Communications relating to, referring to, or evidencing any Transfer or investment You made from any of the funds received from the Debtor or GNET, including pursuant to the Settlement Agreement, including any such Transfer to Goodman, GDMN, JJC, or People, and including any assets You purchased, investments you acquired, or transfers to any person for any reason You made from such funds.

**RESPONSE**: 18920 objects to this request to the extent it seeks documents that are protected from disclosure by the attorney client, work product, common interest, or joint defense privileges.

46.    The Federal Rules broadly allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case." Fed. R. Civ. P. 26(b)(1). "That a requested document or information will not be admissible or relevant to the merits of a claim or defense is not a proper objection to discovery of the document or information under the Federal Rules if the discovery request is reasonably calculated to lead to the discovery of admissible evidence." *Heller*, 303 F.R.D. at 489. The Supreme Court has elucidated the scope of discovery as follows:

> The key phrase in this definition [referring to a prior but materially similar version of rule 26]—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is *or may be* in the case. See *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947). Consistently with the notice-pleading system established by the Rules, *discovery is not limited to issues raised by the pleadings*, for discovery itself is designed to help define and clarify the issues. *Id.*, at 500–501, 67 S.Ct. at 388. *Nor is discovery limited to the merits of a case*, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (emphasis added).

47.     The Fifth Circuit has also observed—albeit in a slightly different context, that "'As a general rule, the use of John Doe to identify a defendant is not favored. However, … plaintiff should be given an opportunity through discovery to identify the unknown defendants …." *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 243 n. 20 (5th Cir. 1993) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)); *see also Smythe v. Does 1 – 10*, CV 15-4801-R, 2015 WL 12819173, *2 (C.D. Cal. Sept. 25, 2015) ("information, the purpose of which is to identify potential defendants, is permissibly discoverable").

48.     The purpose of this litigation is to recover money and property the Debtor transferred to 18920, and the Trustee has reason to believe 18920 no longer possesses all that money and property. The Bankruptcy Code allows the Trustee to recover the money and property not only from 18920, but also from any subsequent transferee. 11 U.S.C. § 550. Furthermore, TUFTA empowers the Trustee to seek equitable remedies such as injunctive relief to prevent

further dissipation of recoverable property.   Tex. Bus. & Comm. Code § 24.008.   Under the circumstances, information concerning subsequent transfers and transferees is discoverable, and the Court should compel the Defendants to provide all such information the Trustee has requested.

## G.    THE COURT SHOULD ORDER THE DEFENDANTS TO CONDUCT AN APPROPRIATE INVESTIGATION

49.    In response to the Trustee's requests for production, the Defendants frequently claim no responsive documents exist.   Indeed, they only produced 79 documents, many of which are duplicative.   So it bears repeating that, "'[i]n responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, FED. R. CIV. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'" *Heller*, 303 F.R.D. at 485.   The Defendants must amend their written responses to elucidate the nature and extent of their investigation, particularly where they claim not to have responsive documents.

## IV.    REQUEST FOR SANCTIONS

50.    There are two provisions that govern sanctions in this situation, both of which are mandatory.   The first is located in rule 26, which provides in relevant part as follows:

(1) *Signature Required; Effect of Signature*. Every … discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name…. By signing, an attorney … certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

\* \* \*

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

* * *

(3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, **must** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g) (emphasis added). The second is found in rule 37, which provides in relevant part as follows:

(3) *Specific Motions.*

* * *

(B) *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

* * *

(iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

* * *

(4) *Evasive or Incomplete Disclosure, Answer, or Response.* For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response **must** be treated as a failure to disclose, answer, or respond.

(5) *Payment of Expenses; Protective Orders.*

(A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(3)-(5) (emphasis added).

51.     Submitting responses to the Trustee's discovery requests in violation of the federal rules and *Heller* was not substantially justified.  The Defendants' refusal to comply with *Heller* after the Trustee brought it to their attention certainly was not substantially justified.  The *Heller* opinion makes clear that including general, boilerplate objections and purporting to answer interrogatories and produce documents "subject to" objections is not only impermissible; it "is not warranted by existing law" and "has no basis at all in the Federal Rules of Civil Procedure." *Heller*, 303 F.R.D. at 484, 487.  Nevertheless, the Trustee provided the Defendants an opportunity to amend their responses without involving the Court in the dispute.  But they refused.  That refusal was not substantially justified, so the Court must award sanctions.

52.     Furthermore, because the Trustee has attempted in good faith to obtain this discovery without involving the Court, and because the Defendants lack any reasonable justification for their discovery failures, the Court should award the Trustee his reasonable attorney's fees incurred in preparing and prosecuting this Motion.  Fed. R. Civ. P. 37(a)(5)(A). Should the Court determine at the hearing on the Motion that an award of attorney's fees to the Trustee is appropriate, the Trustee respectfully requests that the Court set a further hearing on same for the Trustee to prove up the amount of such fees.

## V. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Dixon respectfully requests that the Court enter an order granting the Motion and providing the Trustee such other and further relief to which he may be justly entitled at law or in equity.

RESPECTFULLY SUBMITTED this 21st day of June, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

/s/  *Julian P. Vasek*
Davor Rukavina, Esq.
Tex. Bar No. 24030781
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
500 N. Akard St., Ste. 4000
Dallas, Texas 75201
214-855-7500
drukavina@munsch.com
jvasek@munsch.com

**COUNSEL FOR SCOTT M. SEIDEL,
CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 21st day of June, 2024, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on 18920, Zakharyayev, and Pinkhasova through Michael Cancienne and Joseph Golinkin, their counsel of record.

/s/  *Julian P. Vasek*
Julian P. Vasek
