**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne (SBN 24055256)
Joseph W. Golinkin II (SBN 24087596)
Brittainie J. Zinsmeyer (SBN 24115981)
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
Telephone: 713.955.4025

*Counsel for 18920 N 11th LLC,*
*Steven Zakharyayev,*
*and Evelina Pinkhasova*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SCOTT M. SEIDEL, TRUSTEE; and GNET ATC, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>18920 NW 11th, LLC; JAMES GOODMAN; JAMES FRINZI; STEVEN ZAKHARYAYEV; EVELINA PINKHASOVA; PEOPLE NQ INC.; JJC & PEOPLE LLC; GDMN FAMILY INVESTMENTS 2, LLC,<br><br>*Defendants.* | Case No. 22-31641-mvl-7<br><br><br><br><br>Adversary Proceeding No. 23-03072-mvl |

**DEFENDANT 18920 NW 11TH, LLC'S FIRST AMENDED OBJECTIONS AND RESPONSES TO TRUSTEE'S FIRST SET OF INTERROGATORIES**

To:   Trustee, Scott M. Seidel, by and through his attorneys of record, Davor Rukavina, Esq., Thomas D. Berghman, Esq., Julian P. Vasek, Esq., and Conor P. White, Esp., Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 4000, Dallas, Texas 75201.

18920 N 11th, LLC, Defendant in this Adversary Proceeding, hereby serves upon Scott M. Seidel ("Trustee"), Plaintiff in this Adversary Proceeding, this the *Defendant 18920 NW 11th, LLC's First Amended Objections and Responses to Trustee's First Set of Interrogatories* (the "Interrogatory Responses") pursuant to Rule 33 of the Federal Rules of Civil Procedure as follows.

Trustee's
Exhibit 3

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1. 18920 objects to the instructions and requests to the extent they require 18920 to provide information outside its possession, custody, or control, and go beyond the requirements provided for by Federal Rule of Civil Procedure 34. *See Harper v. City of Dall., Tex.*, No. 3:14-CV-2647-M, 2017 WL 3674830, at *17 (N.D. Tex. Aug. 25, 2017) (discussing the scope of Rule 34's definition of "possession, custody, or control").

2. 18920 objects to the instructions and requests to the extent references to 18920 or any other party or entity include that entity's employees, officers, directors, agents, representatives, members, attorneys, departments, sections, affiliates, subsidiaries, parents, and all other persons acting on its behalf. To the extent a request references a particular entity, 18920 intends to respond based solely on the entity itself, and not the laundry list of other agents, representatives, or other related entities listed.

3. 18920 objects to the definition of the term "Document(s)" to the extent it exceeds the ordinary use of the term and that which is contemplated by Federal Rule of Civil Procedure 34 and in that it is overbroad as defined. 18920 will therefore respond to these requests which reference or seek "Document(s)" in accordance with the ordinary use of the term and the Federal Rules of Civil Procedure.

4. 18920 objects to the definition of "GDMN" to the extent it includes its present and former parents, subsidiaries, affiliates, agents, employees, representatives, assigns, attorneys, predecessors-in-interest, or all others acting on its behalf. 18920 will respond to requests referencing "GDMN" as only the entity GDMN Family Investments 2, LLC.

5. 18920 objects to the definition of "GDMN" to the extent it includes its present and former parents, subsidiaries, affiliates, agents, employees, representatives, assigns, attorneys, predecessors-in-interest, or all others acting on its behalf. 18920 will respond to requests referencing "GDMN" as only the entity GDMN ATC, LLC.

6. 18920 objects to the definition for "You" and "Your" as it includes responses on behalf of its present and former parents, subsidiaries, affiliates, agents, employees, representatives, assigns, attorneys, predecessor-in-interest, and all other persons or entities acting on its behalf. 18920 will respond to requests referencing "You" or "Your" as referencing only 18920.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1.** Identify all of the bank accounts currently held in Your name or for Your benefit and any such bank accounts held at any time since October 1, 2021. The foregoing includes the name of the bank, the account number, and the holder of the account.

**RESPONSE:** 18920 objects to this request as overbroad in that the timeframe provided falls outside of the relevant allegations of misconduct in this matter and is harassing. 18920 also objects to this request to the extent it seeks documents not relevant nor reasonably anticipated to lead to the discovery of admissible evidence. Subject to the foregoing, in 2022, 18920 had a single Bank of America account, which was ultimately closed by Bank of America and for which there is no longer access.

**INTERROGATORY NO. 2.** Identify each and every Transfer made by the Debtor and GNET to You, including the transfer of any funds, including into any bank account held in Your name or held for Your benefit or to which You had access. For each such Transfer that is a transfer of funds, state the transferor, the transferor's bank, the transferor's bank account, the date of the transfer, the method of the transfer, the name of the transferee's bank, the transferee's bank account, and the amount of such transfer.

**RESPONSE:** 18920 received some of, or partial payment relating to, the items provided for in the Settlement Agreement. *See* the Settlement Agreement produced by 18920; the February 10, 2023 deposition testimony of its corporate representative, Steven Zakharyayev, at 59:1–60:2, 62:8–64:5.

**INTERROGATORY NO. 3.** Explain how you were capitalized as of March 9, 2022, including what assets You had on that date and what access to capital, whether equity contributions or loans, You had on that date, and including what capital Your equity sponsors invested in You.

**RESPONSE:** 18920 objects to this request as overbroad as the subject matter information sought exceeds the scope of the allegations in this matter. 18920 also objects to this request to the extent it seeks information that is not relevant nor reasonably anticipated to lead to the discovery of admissible evidence. Subject to the foregoing, 18920 was set up as a special purpose entity that did not carry a balance sheet, but had access to investors. Prior to March 9, 2022, 18920 did not have any assets.

**INTERROGATORY NO. 4.** Explain what the intended source of funds was that would be used by You or transferred on Your behalf to make any payments on the Purchase Agreements or otherwise used to acquire the Transaction Shares, including the amounts of any such payment(s) and who any such payment(s) would came from. In other words, how did You intend and expect to pay for the Transaction Shares and when?

**RESPONSE:** 18920 objects to this request as overbroad and that this request seeks information not relevant nor reasonably anticipated to lead to the discovery of admissible evidence. Subject to the foregoing, 18920 intended to fund the purchase through private capital from investors.

**INTERROGATORY NO. 5.** Did You ever acquire the Transaction Shares and, if so, when and how? Your answer should identify all documents and agreements pursuant to which You acquired the same, all transactions and transfers pursuant to which You paid for the same, and all documents and actions executed or taken to evidence Your acquisition of the Transaction Shares and the date of all of the foregoing, including the transfer of any funds to any of Goodman, GDMN, JJC, and People, and including the amounts, dates, and transferees of such transfers.

**RESPONSE:** 18920 had acquired the Transaction Shares via the purchase agreements, and had a right to them, since it had made payment. However, 18290 never actually received the Transaction Shares, because James Goodman would not sign some of the necessary transfer documents.

**INTERROGATORY NO. 6.** Identify each document or instrument, including any articles of incorporation, bylaws, shareholder agreement, resolution, or other governance document of the Debtor, which You assert or contend gave You any right or option of redemption with respect to the Transaction Shares or any securities of the Debtor as demanded in the Redemption Notice, including any of the Debtor's Series A-1 Preferred Stock, including by identifying the same in Your production to the Trustee in response to his Requests for Production served concurrently herewith.

**RESPONSE:** 18920 objects to this request as overbroad and that this request seeks information not relevant nor reasonably anticipated to lead to the discovery of admissible evidence. Subject to the foregoing, 18920 would refer the Trustee to documents produced by 18920 beginning with bates numbers 18920-0000052, 18920-0000119, and 18920-0000170.

**INTERROGATORY NO. 7.** Explain all investigation, analysis, examination, or due diligence undertaken by You or undertaken on Your behalf in entering into the Purchase Agreements and in determining that any right or option of redemption existed with respect to the Transaction Shares or any securities of the Debtor as demanded in the Demand Notice, including any of the Debtor's Series A-1 Preferred Stock, including by identifying any persons involved in any such investigation, identifying communications you may have had with any person regarding the same, identifying any analysis of the same performed by any person, and identifying any document reviewed or relied on in any such investigation in Your production to the Trustee in response to his Requests for Production served concurrently herewith.

**RESPONSE:** As a representative for 18920, Zakharyayev had several conversations with James Goodman, Goodman Network's former attorney and in-house counsel (Winstead lawyer, Jason Cramer and other counsel brought in by James Goodman, Anthony Rao), and Frinzi. 18920 also reviewed shareholder agreements produced by Goodman and his attorneys with respect to ownership in the shares.

**INTERROGATORY NO. 8.** At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that "18920 NW 11th LLC, (the "Shareholder") is owner of 4,032,918 Series A-1 Preferred Shares"? Your answer should address whether, by that date, 18920 had paid for the Transaction Shares, whether You believed that it needed to pay for the same in order to then own the same, why You may have

4

believed that it need not have paid for the same in order to then own the same, and whether any steps had then been taken for 18920 to take any action to evidence its ownership of the Transaction Shares and what any such action would have been and whether and when it was taken.

**RESPONSE:** The Share Purchase Agreements with the various Goodman entities entitled 18920 to the preferred shares which carried mandatory redemption rights. 18290 initiated payment of $10 million to Goodman Networks around March 9 or 10, 2022.

**INTERROGATORY NO. 9.** At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?"

**RESPONSE:** Beginning in approximately January 2022 through early March 2022, 18920, through its representative Zakharyayev, relied on conversations with Frinzi, Goodman, and Goodman's counsel and documents produced by Goodman as part of negotiating the Share Purchase Agreements, including but not limited to Stock Purchase Procedures, provided that indicated preferred shares were subject to mandatory redemptions.

**INTERROGATORY NO. 10.** Explain all investigation, analysis, examination, or due diligence undertaken by You or undertaken on Your behalf prior to sending the Redemption Notice and with respect to the right or option of redemption referenced therein, including by identifying any persons involved in any such investigation, identifying communications you may have had with any person regarding the same, identifying any analysis of the same performed by any person, and identifying any document reviewed or relied on in any such investigation in Your production to the Trustee in response to his Requests for Production served concurrently herewith.

**RESPONSE:** 18920, through its representative Zakharyayev, had several communications with Frinzi, Goodman, and Goodman's counsel, and reviewed documents produced by Goodman as part of negotiating the Share Purchase Agreements, including, Stock Purchase Procedures provided that indicated preferred shares were subject to mandatory redemptions. *See also* 18920-0000119 (indicating an email from Goodman Networks counsel, Anthony Rao, providing documents to Zakharyayev and discussing the purchase)

**INTERROGATORY NO. 11.** Explain the facts and circumstances of how it was that You first learned of the opportunity to acquire the Transaction Shares and/or demand the redemption thereof by the Debtor, including by identifying any person who approached you or informed you of such opportunity, when and how (such as by telephone, e-mail. or in-person communication) any such person did so, how you otherwise learned of such opportunity, any representations made to You with respect to the same and by which individual (including any profit that You would make by the same), any enticement or inducement promised to You for acquiring the Transaction Shares (including any profit that You would make by the same), and any discussion with any such person of how You would pay for the Transaction Shares.

**RESPONSE:** 18920 objects to this request as overly broad and unduly burdensome as it requires a narrative that is better suited to other forms of discovery. Subject to the foregoing,

5

18920 refers the Trustee to the February 10, 2023 deposition testimony of its corporate representative, Steven Zakharyayev, at 18:11–22:23. As described in the deposition, 18920 was presented with the opportunity to purchase preferred shares of the Series A-1 preferred shares of Goodman Networks from three entities controlled by James Goodman. Shalom Auerbach informed Zakharyayev, as a representative for 18920, that Goodman and his entities were selling his shares. 18920, through its representative Zakharyayev, and Goodman Networks through James Goodman, Frinzi, and various counsel (Cramer and Anthony Rao), negotiated and executed a share purchase agreement that then entitled 18920 to mandatory redemption rights on those shares.

**INTERROGATORY NO. 12.** Did You pay anything to any person, including Frinzi, for anything having to do with Your acquisition of the Transaction Shares, the Settlement Agreement, or any funds transferred by the Debtor or its subsidiaries to You, such as by way of finder's fee, kickback, participation, or otherwise, but excluding amounts paid for the Transaction Shares themselves from their transferors? If so, state when, how, and in what amount(s), and explain why, including whose idea or demand any such payment was.

**RESPONSE:** 18920 objects to this request as vague in its description or list of purported forms of transfers. Subject to the foregoing, no payments were made by 18920 for anything other than the Transaction Shares.

**INTERROGATORY NO. 13.** Identify each transfer or payment made to You or for Your behalf related to or on account of the Settlement Agreement and the transactions contemplated therein, including any such transfer or payment from the Debtor, GNET, American Metal Recovery & Recycling, Inc., Tiger Athletic Foundation, and including any such transfer related to or on account of the "Licensing Agreement" as defined in the Settlement Agreement. Your answer should include the date of any such transfer or payment, the amount thereof, the mode thereof, the source/payor thereof, and the purpose thereof.

**RESPONSE:** 18920 objects to this request as overbroad, and vague. 18920 objects that this request is also better suited to other forms of discovery. Subject to the foregoing, 18920 refers the Trustee to the February 10, 2023 deposition testimony of its corporate representative, Steven Zakharyayev, at 59:1–60:2, 62:8–64:5. As described in the deposition, 18920 received certain items set forth in the Settlement Agreement, including approximately $13.3 million in cash, certain trademarks from Goodman Networks, and the Licensing Agreement.

**INTERROGATORY NO. 14.** What did You do with any funds the subject of Interrogatory No. 2 and No. 13 if any portion thereof is no longer held by You? Your answer should include: any payments or Transfers made pursuant to any of the Purchase Agreements, including the dates and amounts thereof and the transferees thereof; any payments or Transfers made to acquire any assets or property, including investments, from such funds. including the dates of any such transfers, the amounts thereof, and the purpose thereof; and any Transfer of any such funds from You to Zakharyayev or Pinkhasova, including the dates of any such transfers, the amounts thereof, and the purpose thereof.

**RESPONSE:** 18920 objects to this request as overly broad in that it seeks information without a relevant timeframe or subject matter. 18920 also objects to this request in that it seeks

information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 15.**   What value or return consideration did You provide to the Debtor or GNET for the Redemption Notice, Promissory Note, Settlement Agreement, and any of the transfers or payments the subject of Interrogatory No. 2? Your answer should explain both the nature and the amount of such value, and the date(s) on which it was given.

**RESPONSE:**  18920 paid $10 million for the preferred shares pursuant to the Share Purchase Agreements with the three Goodman entities.

**INTERROGATORY NO. 16.**   Have you sold, transferred, or otherwise conveyed any property of Yours at any time since March 9, 2022, outside of the ordinary course of business, and. if so. when. to whom, for what, and why?

**RESPONSE:** 18920 objects to this request as overly broad in that it seeks information outside of the applicable timeframe or subject matter.  18920 also objects to this request in that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 17.**   Was the Promissory Note ever signed? If so, but a signed version thereof is not produced to the Trustee pursuant to his Requests for Production served concurrently herewith, explain Your understanding of what happened to the signed version of the same.

**RESPONSE:**  Yes.  The Promissory Note was signed.  *See* the February 10, 2023 deposition testimony of 18920's corporate representative, Steven Zakharyayev, at 38:14–21, 39:1–15, 39:21–40:2.

**INTERROGATORY NO. 18.**   Have you pledged any of Your property as collateral for any loan or obligation at any time and, if so, when, to whom, for what, and why?

**RESPONSE:** 18920 objects to this request as overly broad and vague as to the information requested, in that it does not define property and seeks information without reference to an applicable timeframe or subject matter.  18920 also objects to this request in that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 19.**   Explain how You arrived at the amount of the Promissory Note, including who calculated such amount, how such amount was calculated, and what communications or documents were considered or relied on by You in arriving at such amount.

**RESPONSE:** 18920 objects to this request to the extent it seeks information that is protected from disclosure by attorney client or work product privileges.  Subject to the foregoing, the amount in the Promissory Note derives from the liquidation value of the Preferred Shares and negotiations with Goodman Networks, Inc.

**INTERROGATORY NO. 20.** Admit that, at the time you entered into the Purchase Agreements, You knew that the Debtor and GNET would be unable to pay any redemption demand or option for the Transaction Shares, and that You had already reached an understanding or oral agreement with Frinzi that the Promissory Note and Settlement Agreement would be given by the Debtor in satisfaction of such redemption demand or option, such that all of the Purchase Agreements, Demand Notice, Promissory Note, and Settlement Agreement were part of the same overall transaction in Your mind. If you deny this Interrogatory, then explain how it was that the Purchase Agreements, Demand Notice, Promissory Note, and Settlement Agreement were all done within forty-eight hours of each other or, if the dates of such documents are incorrect, then state the dates on which such documents were executed.

**RESPONSE:** 18920 objects to this request as an improper interrogatory, as it is actually a request for admission to be propounded pursuant to Federal Rule of Civil Procedure 36.

**INTERROGATORY NO. 21.** Prior to sending the Redemption Notice, did you have any discussions with any person regarding why the holders of the Transaction Shares did not simply redeem them directly with the Debtor, as opposed to the transaction being structured with or through You, and, if so, what were those discussions and Your understanding of why said holders did not redeem the Transaction Shares themselves.

**RESPONSE:** 18920, through its representative Zakharyayev, discussed this issue with Goodman and was informed by Goodman that it was his understanding that he could not directly redeem the preferred shares.

**INTERROGATORY NO. 22.** Taking into account Your costs and payments under the Purchase Agreements, how much gain or profit did You realize or make by entering into the Purchase Agreements and the subsequent Redemption Notice and Settlement Agreement?

**RESPONSE:** 18920 profited approximately $3 million.

**INTERROGATORY NO. 23.** What did You do to earn the gain of profit the subject of Interrogatory No. 22? Explain what capital You used, what risk You had. what transactional fees and expenses You had, what value You added to anyone, and everything else that should be taken into account as a cost or expense of said gain or profit.

**RESPONSE:** 18920 objects to this request as overly broad.  Subject to the foregoing, 18920 negotiated and executed the Share Purchase Agreements, paid for the shares, and had to redeem those shares, then subsequently negotiate to obtain settlement related to the same transactions.

**INTERROGATORY NO. 24.** Explain Your understanding, as of March, 2022, as to why Frinzi, as an agent and officer of the Debtor, would participate in the overall transaction involving the Purchase Agreements. Redemption Notice, Promissory Note, and Settlement Agreement, including what Your understanding was as to how his participation would benefit the Debtor or GNET or serve to advance their interests.

**RESPONSE:** 18920 objects to this request in that it calls for speculation.  Subject to the foregoing, 18920 has no knowledge or understanding regarding Frinzi's decision-making at

the time of these transactions, or how his participation would benefit or advance Debtor's or GNET's interests.

Dated this 19th day of July, 2024.

> JORDAN, LYNCH & CANCIENNE PLLC
>
> By: *s/ Michael Cancienne*
> Michael Cancienne
> State Bar No. 24046330
> Joseph ("Jeb") W. Golinkin II
> State Bar No. 24087596
> Brittainie Zinsmeyer
> State Bar No. 24115981
> 1980 Post Oak Blvd., Ste. 2300
> Houston, Texas 77056
> 713-955-4020 (Telephone)
> 713-955-9644 (Fax)
> mcancienne@jlcfirm.com
> jgolinkin@jlcfirm.
> bzinsmeyer@jlcfirm.com
>
> ATTORNEYS FOR 18920 NW 11th LLC, STEVEN ZAKHARYAYEV, AND EVELINA PINKASHOVA

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of July, 2024, I electronically served the foregoing to counsel of record.

> */s/ Brittainie Zinsmeyer*
> Brittainie Zinsmeyer

9