**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne (SBN 24055256)
Joseph W. Golinkin II (SBN 24087596)
Brittainie J. Zinsmeyer (SBN 24115981)
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
Telephone: 713.955.4025

*Counsel for 18920 NW 11th LLC,*
*Steven Zakharyayev,*
*and Evelina Pinkhasova*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SCOTT M. SEIDEL, TRUSTEE; and GNET ATC, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>18920 NW 11th, LLC; JAMES GOODMAN; JAMES FRINZI; STEVEN ZAKHARYAYEV; EVELINA PINKHASOVA; PEOPLE NQ INC.; JJC & PEOPLE LLC; GDMN FAMILY INVESTMENTS 2, LLC,<br><br>*Defendants.* | Case No. 22-31641-mvl-7<br><br><br><br>Adversary Proceeding No.<br>23-03072-mvl |

**DEFENDANT STEVEN ZAKHARYAYEV'S FIRST AMENDED OBJECTIONS AND RESPONSES TO TRUSTEE'S FIRST SET OF INTERROGATORIES**

To:   Trustee, Scott M. Seidel, by and through his attorneys of record, Davor Rukavina, Esq., Thomas D. Berghman, Esq., Julian P. Vasek, Esq., and Conor P. White, Esp., Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 4000, Dallas, Texas 75201.

Steven Zakharyayev ("Zakharyayev"), Defendant in this Adversary Proceeding, hereby serves upon Scott M. Seidel ("Trustee"), Plaintiff in this Adversary Proceeding, this the

*Defendant Steven Zakharyayev's First Amended Objections and Responses to Trustee's First Set*

Trustee's
Exhibit 7

*of Interrogatories* (the "Interrogatory Responses") pursuant to Rule 33 of the Federal Rules of Civil Procedure as follows.

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

1. Zakharyayev objects to the instructions and requests to the extent references to Zakharyayev or any other party or entity include that entity's employees, officers, directors, agents, representatives, members, attorneys, departments, sections, affiliates, subsidiaries, parents, and all other persons acting on its behalf. To the extent a request references a particular entity, Zakharyayev intends to respond based solely on the entity itself, and not the laundry list of other agents, representatives, or other related entities listed.

2. Zakharyayev objects to the definition of the term "Document(s)" to the extent it exceeds the ordinary use of the term and that which is contemplated by Federal Rule of Civil Procedure 34 and in that it is overbroad as defined. Zakharyayev will therefore respond to these requests which reference or seek "Document(s)" in accordance with the ordinary use of the term and the Federal Rules of Civil Procedure.

3. Zakharyayev objects to the definition of "18920" to the extent it includes its present and former parents, subsidiaries, affiliates, agents, employees, representatives, assigns, attorneys, predecessors-in-interest, or all others acting on its behalf. Zakharyayev will respond to requests referencing "18920" as only the entity 18920 NW 11th, LLC.

4. Zakharyayev objects to the definition of "GDMN" to the extent it includes its present and former parents, subsidiaries, affiliates, agents, employees, representatives, assigns, attorneys, predecessors-in-interest, or all others acting on its behalf. Zakharyayev will respond to requests referencing "GDMN" as only the entity GDMN Family Investments 2, LLC.

5. Zakharyayev objects to the definition of "GDMN" to the extent it includes its present and former parents, subsidiaries, affiliates, agents, employees, representatives, assigns, attorneys, predecessors-in-interest, or all others acting on its behalf. Zakharyayev will respond to requests referencing "GDMN" as only the entity GDMN ATC, LLC.

6. Zakharyayev objects to the definition for "You" and "Your" as it includes responses on behalf of Zakharyayev's agents, assigns, attorneys, or others acting on his behalf. Zakharyayev will respond to requests referencing "You" or "Your" as referencing only himself.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1.** Identify each State and court (excluding admissions pro hac vice) in which You have ever been admitted to practice law. and the date of such admission, and, for each such jurisdiction, if You are no longer admitted to practice law therein, the date on which You ceased being admitted to practice law and the reason(s) why.

**RESPONSE:** Zakharyayev objects to this request as overbroad in that it fails to provide an applicable timeline and vague as to the information it seeks, and harassing. Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing, Zakharyayev is licensed to practice law in Florida (admitted October 30, 2010), New Jersey (admitted February 16, 2011) and in New York (admitted May 29, 2013).

**INTERROGATORY NO. 2.** Has a formal disciplinary proceeding ever been commended against You in any jurisdiction You were ever admitted to practice law, including admissions pro hac vice, and, if so, identify the proceeding and the jurisdiction and state the results thereof.

**RESPONSE:** Zakharyayev objects to this request as overbroad in that it fails to state an applicable timeline or subject matter and is harassing. Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, Zakharyayev has not been subject to formal disciplinary proceedings.

**INTERROGATORY NO. 3.** Explain what Your law practice has primarily consisted of since You were first licensed to practice law, including whether You believe You hold any expertise in any area of the law and, if so, what area, and whether Your practice has been primarily transaction or litigation, or a mix thereof.

**RESPONSE:** Zakharyayev objects to this request as overbroad in that it fails to state an applicable timeline. Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing, Zakharyayev's experience includes Real Estate Transactions, Creditors' Rights, and Litigation.

**INTERROGATORY NO. 4.** Have You ever been sued? If so, identify the court and proceeding number for each such proceeding.

**RESPONSE:** Zakharyayev objects to this request as overbroad in that it does not specify a relevant timeframe nor subject matter for the lawsuits it seeks to discover. Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 5.** Have You ever been charged with or indicted for a crime, except non-alcohol related driving offenses, or have you ever entered into any agreement with any prosecutor to avoid such charges or indictment? If so, provide the court and proceeding number for each such proceeding.

**RESPONSE:** Zakharyayev objects to this request as overbroad as it fails to specify an applicable timeline or subject matter for the type of crime.  Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Zakharyayev also objects to this request to the extent it exceeds the confines of Federal Rule of Evidence 609.  Subject to the foregoing, none.

**INTERROGATORY NO. 6.**     Explain the general nature of your relationships with Shalom Auerbach, including how long you have known him, how you met him, whether you are friends with him or his family, whether you are related as family members, whether you or he serve in any religious capacities to members of your families, and whether you have ever transacted any business with him, including as investors in the same business, being on the same board or management team of any business, or as a client of his or he as a client of Yours or any business affiliated with You.

**RESPONSE:** Zakharyayev objects to this request as overbroad as it fails to specify an applicable timeframe. Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing, Zakharyayev and Shalom Auerbach are friends that met in 2018. They are not related.   They currently operate a collections business together and have made some small pre-IPO investments together.

**INTERROGATORY NO. 7.**     Explain the general nature of Your relationships with Frinzi, including how long you have known him, how you met him, whether you are friends with him or his family, whether you are related as family members, whether you or he serve in any religious capacities to members of your families, and whether you have ever transacted any business with him, including as investors in the same business, being on the same board or management team of any business, or as a client of his or he as a client of Yours or any business affiliated with You.

**RESPONSE:** Zakharyayev objects to this request as overbroad as it fails to specify an applicable timeframe.  Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing, Zakharyayev met Frinzi sometime in 2021 or 2022 through Shalom Auerbach. Zakharyayev later helped Frinzi with some contract matters, but did not charge any fee or have a formal representative relationship.

**INTERROGATORY NO. 8.**     Explain the general nature of Your relationships with Neil Auerbach, including how long you have known him, how you met him, whether you are friends with him or his family, whether you are related as family members, whether you or he serve in any religious capacities to members of your families, and whether you have ever transacted any business with him, including as investors in the same business, being on the same board or management team of any business, or as a client of his or he as a client of Yours or any business affiliated with You.

**RESPONSE:** Zakharyayev objects to this request as overbroad as it fails to specify an applicable timeframe. Zakharyayev also objects to this interrogatory as it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing, Zakharyayev met Neil Auerbach through Shalom Auerbach sometime in 2019 or 2020, and has helped Neil Auerbach with some contract matters relating to Hudson Energy.

**INTERROGATORY NO. 9.** At the time of the Redemption Notice, who did You understand Frinzi to be with respect to the Debtor and GNET, including whether You understood him to be a director, officer, or manager of the Debtor and GNET?

**RESPONSE:** At the time of the Redemption Notice, it was presented to Zakharyayev that Frinzi was an officer and potentially a member of Debtor and GNET.

**INTERROGATORY NO. 10.** At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that "18920 NW 11th LLC, (the "Shareholder") is owner of 4,032,918 Series A-1 Preferred Shares" as of the date of the Redemption Notice? Your answer should address whether, by that date, 18920 had paid for the Transaction Shares, whether You believed that it needed to pay for the same in order to then own the same, why You may have believed that it need not have paid for the same in order to then own the same, and whether any steps had then been taken for 18920 to take any action to evidence its ownership of the Transaction Shares and what any such action would have been and whether and when it was taken.

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure by the attorney client or work product doctrine. Zakharyayev also objects that this information is better obtained through 18920. *See* 18920 Obj. & Resp. to Trustee's 1st Interrog. at Interrog. No. 8. The Share Purchase Agreements with the various Goodman entities entitled 18920 to the preferred shares which carried mandatory redemption rights. 18290 initiated payments of $10 million to Goodman Networks around March 9 or 10, 2022. 18920 recognized it needed to pay to purchase the shares consistent with the terms of the Share Purchase Agreement. As of the date of the Redemption Notice, the shares had not yet been paid for, but 18920 had an obligation to make such a payment.

**INTERROGATORY NO. 11.** At the time of the execution of the Purchase Agreements, how did You believe or understand that 18920 paid, or would pay, for the Transaction Shares, and when it would do so or when it had done so?

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure by the attorney client or work product doctrine. Zakharyayev also objects to this request as vague. Subject to the foregoing, 18920 had relationships with various investors and lenders.

**INTERROGATORY NO. 12.** At the time of the Redemption Notice, what was the factual basis for the statement in the Redemption Notice that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis?"

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure by the attorney client or work product doctrine. Zakharyayev also objects that this information is better obtained through 18920. *See* 18920 Obj. & Resp. to Trustee's 1st Interrog. at Interrog. No. 9. As a representative of 18920, Zakharyayev believed the governing

5

documents provided for the mandatory redemption at their liquidation value on a quarterly basis, as was indicated to him by other parties and as agreed by company.

**INTERROGATORY NO. 13.**   Explain what steps You took, including any due diligence You undertook, to review whether the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis," as stated in the Redemption Notice, including by identifying any documents You reviewed or relied on to state the same. and including any communications You reviewed, made, had, were given, or You relied on, to state the same. Identify any such documents or communications in Your production to the Trustee's Requests for Production served concurrently herewith.

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure based on attorney client or work product privileges. Zakharyayev objects to this request as overbroad. Zakharyayev further objects that this information is more properly sought from 18920. *See* 18920 Obj. & Resp. to Trustee's 1st Interrog. at Interrog. Nos. 9, 10. As a representative for 18920, Zakharyayev had written and oral communications with Frinzi and Goodman, as well as their counsel from Winstead, and Anthony Rao, and reviewed documents provided relating to the operational structure of those entities and the rights of the holders of preferred shares.

**INTERROGATORY NO. 14.**   At the time of the Redemption Notice, did You believe or understand that the "Preferred Shares are subject to mandatory redemptions at their liquidation value on a quarterly basis," as stated therein, and, if You so believed, why did You so believe?

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure based on attorney client or work product privileges. Zakharyayev further objects that this information is more properly sought from 18920. *See* 18920 Obj. & Resp. to Trustee's 1st Interrog. at Interrog. Nos. 9, 10. Zakharyayev, as a representative of 18920, believed the preferred shares carried mandatory redemption rights based on written and oral communications with Frinzi and Goodman, as well as their counsel from Winstead, and Anthony Rao, and reviewed documents provided relating to the operational structure of those entities and the rights of the holders of preferred shares.

**INTERROGATORY NO. 15.**   At the time of the Redemption Notice, what did You believe or understand was the "liquidation value [of Preferred Shares] on a quarterly basis" as stated in the Redemption Notice, and why?

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure based on attorney client or work product privileges. Zakharyayev objects to this request as overbroad. Zakharyayev further objects that this information is more properly sought from 18920. *See* Steven Zakharyayev's February 10, 2023 deposition testimony, given as 18920's corporate representative, at 34:4–16, 37:16–38:5. As a representative for 18920, Zakharyayev believed the liquidation value was the amount referenced in the Redemption Agreement.

6

**INTERROGATORY NO. 16.** At the time of the Redemption Notice, did You believe or understand that the Debtor had the funds necessary to pay the "mandatory redemptions" as stated in the Redemption Notice and if so, why?

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure based on attorney client or work product privileges. Zakharyayev further objects that this information is more properly sought from 18920. Subject to the foregoing, Frinzi represented the Debtor had necessary funds, particularly cash, assets in the amount of $75 million, and a $44 million note payable to the Debtor secured by the AMRR business, which would have been more than sufficient to allow 18920 to redeem on its preferred shares.

**INTERROGATORY NO. 17.** At the time of the execution of the Purchase Agreements, where and how did you believe that the funds that would be used by 18920 to pay for the Transaction Shares would ultimate [sic] come or originate from.

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure by the attorney client or work product doctrine. Zakharyayev also objects to this request as vague and to the extent it is duplicative of Interrogatory No. 11. Subject to the foregoing, *see* Response to Interrogatory No. 11.

**INTERROGATORY NO. 18.** At the time of the Redemption Notice, did You have a belief or understanding as to the Debtor's solvency and, if so, state the factual basis for any such belief or understanding. As used herein, "solvency" means both that the assets of the Debtor exceeded its liabilities, including any debt payable on the Redemption Notice, and that the Debtor was paying its debts as they became due, including any debt payable on the Redemption Notice.

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure based on attorney client or work product privileges. Zakharyayev objects to this request as overbroad. Zakharyayev further objects that this information is more properly sought from 18920. *See* Steven Zakharyayev's February 10, 2023 deposition testimony, given as 18920's corporate representative, at 71:4–16. As a representative for 18920, Zakharyayev spoke with Frinzi, who was CEO of Goodman Networks, and through those conversations, it was represented that the company was not insolvent and there was sufficient cash to conduct the transaction.

**INTERROGATORY NO. 19.** As of the date of the Settlement Agreement, what value did You believe or understand that 18920 gave to the Debtor for the Settlement Agreement or what the "value received" stated in the Promissory Note was?

**RESPONSE:** Zakharyayev objects to this request to the extent it seeks information protected from disclosure based on attorney client or work product privileges. Zakharyayev further objects that this information is more properly sought from 18920. *See* 18920 Obj. & Resp. to Trustee's 1st Interrog. at Interrog. No. 15. As a representative for 18920, Zakharyayev is aware that 18920 paid $10 million for the preferred shares pursuant to the Share Purchase Agreements with the three Goodman entities

7

**INTERROGATORY NO. 20.**   As of the date of the Settlement Agreement, state the factual basis for Your belief or understanding in answer to Interrogatory No. 17.

**RESPONSE:**   Zakharyayev objects that this request is vague in that it fails to state with specificity the information it seeks.  Subject to the foregoing, *see* Response to Interrogatory No. 11.

**INTERROGATORY NO. 21.**   Who negotiated the Settlement Agreement on behalf of 18920, and who was it negotiated with on behalf of the Debtor?

**RESPONSE:**   Zakharyayev objects that this information is more properly sought from 18920.  Subject to the foregoing, Zakharyayev, as a representative and counsel for 18920, negotiated the Settlement Agreement with Goodman Networks, Inc. representatives Goodman and Frinzi, as well as counsel for Debtor.

**INTERROGATORY NO. 22.**   Do You agree that. at the time of the execution of the Purchase Agreements, You already had an understanding or agreement, whether oral or written, with the Debtor, GNET. Frinzi, Goodman, or anyone else, that, in lieu of the Debtor paying the redemption demand the subject of the Redemption Notice, the Debtor would instead execute the Promissory Note and the Settlement Agreement and deliver to 18920 the consideration provided for in the Settlement Agreement? If so, who did You or 18920 have that understanding or agreement with, when did such understanding or agreement or agreement arise, and what to You was the purpose of any such understanding or agreement.

**RESPONSE:**  Zakharyayev objects to this request to the extent it seeks information protected from disclosure based on attorney client or work product privileges.  Zakharyayev further objects that this information is more properly sought from 18920.  Subject to the foregoing, Zakharyayev does not agree.

**INTERROGATORY NO. 23.**   Explain the negotiations and the sequence of events that led to the negotiation, any execution of, and any performance under, the Promissory Note and the Settlement Agreement, including whose idea such documents originally was, why they were negotiated, why they were negotiated within one or two days of each other, and what the consideration for each of these documents was. and the persons involved in such negotiation, execution, and performance, including who any professional (whether attorney, accountant, or financial advisor) for any of the parties thereto was.

**RESPONSE:**   Zakharyayev objects to this request as it seeks information that is protected from disclosure by attorney client or work product privileges.  Zakharyayev also objects that this request is unduly burdensome and better suited for other forms of discovery. Zakharyayev further objects that this information is more properly sought from 18920.  Subject to the foregoing, *see* Steven Zakharyayev's February 10, 2023 deposition testimony, given as 18920's corporate representative, at 34:4–52:17, 54:7–55:7, 58:12–60:4, 62:8–64:9.  After executing the purchase of the Preferred Shares, 18920 became the owner of those shares and made a demand as to the mandatory redemption rights.  Goodman Networks was essentially obligated to repurchase the shares at the liquidation value.  This obligation led to the negotiation and execution of the Promissory Note and, thereafter, the Settlement Agreement.

Dated this 19th day of July, 2024.

                JORDAN, LYNCH & CANCIENNE PLLC

                By: *s/ Michael Cancienne*
                    Michael Cancienne
                    State Bar No. 24046330
                    Joseph ("Jeb") W. Golinkin II
                    State Bar No. 24087596
                    Brittainie Zinsmeyer
                    State Bar No. 24115981
                    1980 Post Oak Blvd., Ste. 2300
                    Houston, Texas 77056
                    713-955-4020 (Telephone)
                    713-955-9644 (Fax)
                    mcancienne@jlcfirm.com
                    jgolinkin@jlcfirm.com
                    bzinsmeyer@jlcfirm.com

                    ATTORNEYS FOR 18920 NW 11th LLC,
                    STEVEN ZAKHARYAYEV, AND EVELINA
                    PINKASHOVA

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 19th day of July, 2024, I electronically served the foregoing to counsel of record.

                    */s/ Brittainie Zinsmeyer*
                    Brittainie Zinsmeyer