Randall A. Pulman
State Bar No. 16393250
Anna K. MacFarlane
State Bar No. 24116701
**PULMAN CAPPUCCIO & PULLEN, LLP**
2161 NW Military Hwy., Suite 400
San Antonio, Texas 78213
Telephone: (210) 222-9494
Facsimile: (210) 892-1610
rpulman@pulmanlaw.com
amacfarlane@pulmanlaw.com

**COUNSEL FOR JAMES GOODMAN**, *et al.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re:<br><br>GOODMAN NETWORKS, INC.,<br>  Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 22-31641-mvl-7<br><br>(Chapter 7) |
| SCOTT M. SEIDEL, TRUSTEE; and<br>GNET ATC, LLC,<br>  Plaintiffs,<br><br>v.<br><br>18920 NW 11th, LLC; JAMES GOODMAN;<br>JAMES FRINZI; STEVEN<br>ZAKHARYAYEV; EVELINA<br>PINKHASOVA; PEOPLE NQ INC.;<br>JJC & PEOPLE LLC; GDMN FAMILY<br>INVESTMENTS 2, LLC,<br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADVERSARY PROCEEDING<br>NO: 23-03072-mvl |

**DEFENDANT JAMES GOODMAN'S AMENDED OBJECTIONS AND RESPONSES TO
TRUSTEE'S FIRST SET OF INTERROGATORIES**

To:   Trustee, Scott M. Seidel, by and through his attorneys of record, Davor Rukavina, Munsch Hardt, Kopf & Harr, P.C., 500 N. Akard St., Ste. 4000, Dallas, Texas, 75201.

**EXHIBIT G-1**

Defendant James Goodman ("Defendant"), by and through his undersigned counsel, hereby serves his amended objections and responses to Trustee Scott M. Seidel's First Set of Interrogatories to Defendant James Goodman.

DATED this 9th day of September, 2024.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**COUNSEL FOR JAMES GOODMAN**

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on September 9, 2024, the foregoing will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District, including the following:

*Via email* drukavina@munsch.com
Davor Rukavina
Munsch, Hardt, Kopf & Harr
500 N. Akard Street, Ste 3800
Dallas, TX 75201-6659

*Via email:* jgolinkin@jlcfirm.com;
mcancienne@jlcfirm.com
Michael Cancienne
Joseph Webster Golinkin, II
Jordan, Lynch & Cancienne PLLC
1980 Post Oak Blvd. Ste 2300
Houston, TX 77056

*Via email:* jason.rudd@wickphillips.com
Jason Rudd
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, TX 75204

                */s/   Randall A. Pulman*
                Randall A. Pulman

**RESPONSES TO FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify each person or entity that had any role in participating in putting You in touch with, or first identifying as a contract counterparty, 18920, Zakharyayev, or Pinkhasova for purposes of negotiating a sale of the Transaction Shares, and each such person's role with respect to the same, including Frinzi, Shalom Auerbach, Neil Auerbach, Sierra Constellation Partners, or any attorney for the Debtor.

RESPONSE: James Frinzi.

**INTERROGATORY NO. 2:**

Explain how, and the circumstances of how, You were first introduced to, or made aware of, 18920, Zakharyayev, or Pinkhasova, including when, by whom, and why to Your understanding, and include whether you have ever met Zakharyayev or Pinkhasova in person or had any communications with them by telephone, videoconference, or any other mode of communication.

RESPONSE: I communicated to Frinzi about wanting to sell the A-1 Preferred Shares held by the Sellers. About a month following the initial communication about wanting to sell the A-1 Preferred Shares, Frinzi sent an email to me and my attorneys introducing Shalom Auerbach and his entity 18920 NW 11th LLC as a potential purchaser for the shares. I communicated with Shalom and 18920's attorney, Steven Zakharyayev, via email. I never communicated with Pinkhasova.

**INTERROGATORY NO. 3:**

Explain how You or the Sellers arrived at the purchase price amounts specified in the Purchase Agreements, including how and why the amounts thereof are different when the same stock is involved in each.

RESPONSE: Based on my best business judgment and negotiations with Zakharyayev, the price was determined based on a range I had in my mind for value of the shares. Because I believed that there was a range of prices, the prices per share all fell along the range that I determined to be reasonable based on my best business judgment.

**INTERROGATORY NO. 4:**

Explain why You or the Sellers decided to enter into the Purchase Agreements as opposed to requesting or demanding a redemption of the Transaction Shares directly from the Debtor.

RESPONSE: I wanted to sell the A-1 Preferred Shares held by my two entities and my son's entity. Rather than seek redemption from the Debtor, being generally aware of the Debtor's financial situation, I decided to find a third-party independent purchaser for the A-1 Preferred Shares. I used my best business judgment and decided that selling shares to a willing third-party purchaser would be better than pursuing redemption from the Debtor.

**INTERROGATORY NO. 5:**

In causing the Sellers to enter into the Purchase Agreements, did You know or believe that 18920 would thereafter, or simultaneously therewith, demand or request a redemption of the Transaction Shares and, if so, explain how You knew or believed so, including by identifying any person who may have shared any such information, intention, or belief with You.

RESPONSE: No.

**INTERROGATORY NO. 6:**

State the date(s) and date range(s) during which you were ever a director or officer of the Debtor or GNET (including managing member) and what your role or title during each of the same was.

RESPONSE: I was a director of the Debtor from June 2019 until late 2021. My formal resignation as director of the Debtor occurred on February 1, 2022.

To the best of my knowledge, I was never an officer or director of GNET ATC, LLC.

**INTERROGATORY NO. 7:**

As of the execution of the Purchase Agreements, who did You believe or understand would be paying the Sellers under the Transaction Shares and where did You believe that the funds to do so would originate from, including whether any of such payment would originate from the Debtor or GNET, and explain the basis of Your belief or understanding.

RESPONSE: I believed that 18920 would provide funds to purchase the Transaction Shares originating from 18920. I incorporate by reference as though fully set forth herein the Buyer's representations and warranties in the Purchase Agreements between 18920 and People NQ and GDMN.

**INTERROGATORY NO. 8:**

Identify each person acting for on or behalf of 18920, including any attorney, accountant, or financial advisor, with whom You or the Sellers negotiated the Purchase Agreements (including the amounts payable thereunder) and, to Your understanding as of March 9, 2022, what such person's role was.

RESPONSE: Steven Zakharyayev.

**INTERROGATORY NO. 9:**

Identify each person acting for or on behalf of the Sellers, including any attorney, accountant, or financial advisor, who negotiated the Purchase Agreements for the Sellers (including the amounts payable thereunder) and, to Your understanding as of March 9, 2022, what such person's role was.

RESPONSE: I negotiated on behalf of myself and the Sellers. My attorneys were also part of the negotiations and acted on my behalf and the Sellers' behalf: Jason Cramer and Billy Rohrlich.

**INTERROGATORY NO. 10:**

As of the execution of the Purchase Agreements, did You believe or understand that the Transaction Shares held any right or option of redemption and if so, explain why, including what You did to form such belief or understanding or who You discussed the issue with in forming such belief or understanding, and identify any document or communication you consulted, relied on, or reviewed in forming such belief or understanding. To the extent Your answer includes an attorney representing You, You may exclude such attorney's information and advice. To the extent that any attorney retained by the Debtor or GNET provided any information regarding Your belief or understanding, You are to detail the same in Your answer.

RESPONSE: At the time of execution of the Purchase Agreement, I believed that there was an optional redemption right as provided in Article 5 of the Sixth Amended and Restated Certificate of Formation of Goodman Networks Incorporated.

**INTERROGATORY NO. 11:**

As of the execution of the Purchase Agreements, identify any document of the Debtor, whether articles of incorporation, bylaws, Chapter 11 plan, confirmation order, board resolution, shareholder agreement, or other document that You at that time believed or understood to be in effect and to provide for any optional or mandatory redemption of the Transaction Shares?

RESPONSE: Sixth Amended and Restated Certificate of Formation of Goodman Networks Incorporated.

**INTERROGATORY NO. 12:**

Do You, as of now, contend that any document of the Debtor, whether articles of incorporation, bylaws, Chapter 11 plan, confirmation order, board resolution, shareholder agreement, or other document, in effect as of the date of the Purchase Agreements, provided the holder of the Transaction Shares with any optional or mandatory redemption of the Transaction Shares.

RESPONSE: Sixth Amended and Restated Certificate of Formation of Goodman Networks Incorporated.

**INTERROGATORY NO. 13:**

Identify any document within the scope of Interrogatory No. 12 You now contend provided, as of the date of the Purchase Agreements, any optional or mandatory redemption of the Transaction Shares.

RESPONSE: Sixth Amended and Restated Certificate of Formation of Goodman Networks Incorporated.

**INTERROGATORY NO. 14:**

Did You or the Sellers make any payment to Frinzi or otherwise give any consideration to Frinzi, including from any of the funds paid or transferred to the Sellers under the Purchase Agreements, related to his role in the Purchase Agreements or the redemption by 18920 of the Transaction Shares or related to his role in putting 18920 in touch with the Sellers and, if so, state what any such payment or consideration was, the value thereof, and the date thereof.

RESPONSE: No.

**INTERROGATORY NO. 15:**

Identify what the "antecedent debt" is, and the amount thereof and the basis thereof, as pled by You in Defense No. 1 in Your answer to the Plaintiffs' amended complaint in this Adversary Proceeding.

RESPONSE: None.

**INTERROGATORY NO. 16:**

Explain Your good faith and identify each fact or allegation You contend evidences said good faith, as pled by You in Defense No. 2 and Defense No. 3 in Your answer to the plaintiffs' amended complaint in this Adversary Proceeding.

4863-9029-2705, v. 1 / 6514.002

RESPONSE: I entered into these Purchase Agreements for the sale of People NQ and GDMN's A-1 Preferred Shares in good faith. I understood at the time that 18920 was an independent, willing third party purchaser of the Debtor's A-1 Preferred Shares that were held by my entities, People NQ and GDMN. As of the execution of the Purchase Agreement, 18920 represented to me that they had funds immediately available to pay for the shares. The Purchase Agreements represent and warrant that 18920 had funds immediately available and that 18920 sought to purchase the shares for investment purposes only.

**INTERROGATORY NO. 17:**

After the execution of the Purchase Agreements, did You have any role or participating whatsoever with respect to 18920's redemption notice to the Debtor for the Transaction Shares or the Debtor's or GNET's honoring of said redemption notice or their subsequent transfer of funds to 18920 on account of said redemption notice, including whether Frinzi or anyone else discussed these issues with You prior to said transfers, sought Your approval of or consent to such transfers, made You aware of such transfers, or sought Your opinion, advice, or view of the legitimacy of the redemption notice.

RESPONSE: No.

**INTERROGATORY NO. 18:**

Do you agree that, as of the date of the Purchase Agreements and at all times thereafter, the liabilities and debts of the Debtor exceeded the value of the Debtor's assets. If You disagree, explain why You disagree and identify each allegation, fact, or document that You contend supports your answer.

RESPONSE: Agreed.

**INTERROGATORY NO. 19:**

Do You agree that, as of the date of the Purchase Agreements and at all times thereafter, the liabilities and debts of GNET exceeded the value of GNET's assets. If You disagree, explain why You disagree and identify each allegation, fact, or document that You contend supports your answer.

RESPONSE: I lack sufficient knowledge to agree or disagree.

## VERIFICATION

STATE OF TEXAS §
§
COUNTY OF BEXAR §

BEFORE ME, the undersigned authority, on this day personally appeared James E. Goodman, a defendant in this lawsuit, who, being duly sworn on his oath, deposed and said that he is duly qualified and authorized in all respects to make this affidavit; that he has read the above and foregoing amended answers to Plaintiffs' interrogatories; and that every statement contained therein is within his knowledge true and correct.

By: James E. Goodman, Affiant

SUBSCRIBED AND SWORN to before me on the 9th day of September 2024 to certify which witness my hand and official seal.



Notary Public
In and for the State of Texas