Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
Jacob J. King
Texas Bar No. 24136951
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6605
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
E-mail: drukavina@munsch.com
       tberghman@munsch.com
       cwhite@munsch.com
       jking@munsch.com

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 22-31641-mvl-7 |
| GOODMAN NETWORKS, INC., | § § | |
| | § | (Chapter 7) |
| Debtor. | § § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, and GNET ATC, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Adv. Proc. No. 23-03072 |
| 18920 NW 11th LLC, *et al.*, | § § § | |
| Defendants. | § § § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE | § § | |
| Plaintiff, | § § | |
| v. | § § | Adv. Proc. No. 23-03090 |
| | § § | |

| | | |
|---|---|---|
| HUDSON CLEAN ENERGY ENTERPRISES, LLC, *et al.*, | § § § § | |
| Defendants. | § § | |
| SCOTT M. SEIDEL, TRUSTEE, and GNET ATC, LLC | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Adv. Proc. No. 24-03022 |
| GENESIS NETWORKS GLOBAL SERVICES, LLC; and JAMES GOODMAN, | § § § § § | |
| Defendants. | § § § | |
| SCOTT M. SEIDEL, TRUSTEE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Adv. Proc. No. 24-03054 |
| SYMBIONT VENTURES, LLC | § § § | |
| Defendant. | § § | |

**TRUSTEE'S LIMITED OBJECTION TO
THE MOTION TO CONSOLIDATE FOR PRETRIAL MATTERS**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW, Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee for Goodman Networks, Inc. (the "Debtor"), and on behalf of GNET ATC, LLC ("GNET"), the plaintiffs in the above-styled adversary proceedings, and files this the *Trustee's Limited Objection* to the *Motion to Consolidate for Pretrial Matters* (the "Objection," and "Motion to Consolidate," respectively) filed by James Goodman ("J.E. Goodman"), People NQ, Inc., JJC & People, LLC ("JJC"), GDMN Family Investments 2, LLC ("GDMN 2"), Symbiont Ventures, LLC f/k/a

Goodman Investment Holdings, LLC ("Symbiont"), and Genesis Networks Global Services, LLC ("GNGS," and together with J.E. Goodman, People NQ, JJC, GDMN 2, and Symbiont, the "J.E. Goodman Movants"), respectfully stating as follows:

### I. SUMMARY

1. The Trustee agrees that *Seidel v. Hudson Clean Energy Enterprises, LLC*, Adv. Proc. No. 23-03090 (the "Hudson Litigation") and *Seidel v. 18920 NW 11th LLC*, Adv. Proc. No. 23-03072 (the "18920 Litigation") should be consolidated for pretrial matters, including discovery, and for pretrial matters only. The Trustee files his Objection because it is improper to also consolidate *Seidel v. Genesis Networks Global Services, LLC*, Adv. Proc. No. 24-03022 (the "Genesis Litigation") and *Seidel v. Symbiont Ventures, LLC*, Adv. Proc. No. 24-03054 (the "Symbiont Litigation," together with the Hudson Litigation, 18920 Litigation, and Genesis Litigation, the "Adversary Proceedings") because the Genesis Litigation and Symbiont Litigation are targeted at factually distinct transactions that do not materially relate to the Hudson Litigation and 18920 Litigation. Consolidating the Genesis Litigation and Symbiont Litigation would not simplify or streamline discovery in those matters. Thus, the Trustee objects to the Motion to Consolidate to the extent that it seeks to consolidate Genesis and Symbiont.

2. Further, opposing counsel suggests in the Motion to Consolidate that the Adversary Proceedings should eventually be consolidated with the District Court Litigation (as defined below). Based on this suggestion, the Trustee also argues that omnibus consolidation of all lawsuits involving any of the Goodman Movants is procedurally inappropriate and asserts that the Court should deny consolidation for the purpose of eventual substantive consolidation with the District Court Litigation. Accordingly, the Trustee objects to the Motion to Consolidate and requests partial denial as to the Genesis Litigation and Symbiont Litigation.

## II. BACKGROUND

**A. Hudson and 18920**

3. On August 5, 2023, the Trustee filed his Original Complaint in the 18920 Litigation asserting claims for actual and constructively fraudulent transfers, breach of fiduciary duty against James Frinzi, fraud against Evelina Pinkhasova, and aiding and abetting fraud against Steven Zakharyayev. *18920*, Adv. Proc. No. 23-03072-mvl, ECF No. 1. Later, the Trustee filed his Amended Complaint adding a claim for knowing participation in breach of fiduciary duty against Evelina Pinkhasova, Steven Zakharyayev, and J.E. Goodman. *Id*. at ECF No. 23.

4. In essence, the Trustee seeks to recover $13.5 million and other valuable assets that J.E. Goodman, Frinzi, 18920 NW 11th, LLC, Zakharyayev, and Pinkhasova stripped from the Debtor under a nonexistent redemption right for preferred shares held by J.E. Goodman. The relevant transactions all occurred on or about March of 2022 and involved several entities owned by the defendants.

5. Not long after filing the 18920 Litigation, on November 7, 2023, the Trustee filed his Original Complaint in the Hudson Litigation asserting claims for actual and constructively fraudulent transfers, preference, breach of fiduciary duty, conspiracy, unjust enrichment, and partner liability. *Hudson*, Adv. Proc. No. 23-03090-mvl, ECF No. 1. The Hudson Litigation involves the transfer of $17 million in the Debtor's funds to redeem bonds held by J.E. Goodman. The relevant transactions in the Hudson Litigation occurred on or about February 2022 and coincides with the scheme precipitating the 18920 Litigation.

6. The Hudson Litigation and 18920 Litigation are related factually and temporally to one another and involve a cast of related parties such that consolidation of these actions for the purposes of pretrial discovery is warranted. In fact, the parties involved in the Hudson Litigation

and 18920 Litigation have effectively informally consolidated pretrial discovery in these adversary proceedings, and the Trustee anticipates amending the Agreed Scheduling Order in both cases, by further agreement with the Parties, to comport with one another. Further, the Trustee has completed multiple depositions and taken significant discovery in the Hudson Litigation and 18920 Litigation and believes they are much closer to trial than any of the other Adversary Proceedings.

**B.    Genesis and Symbiont**

7.    On April 12, 2024, the Trustee filed his Original Complaint in the Genesis Litigation asserting claims for constructively fraudulent transfers and breach of fiduciary duty against J.E. Goodman. *Genesis*, Adv. Proc. No. 24-03002-mvl, ECF No. 1. The Genesis Litigation involves a series of transactions by J.E. Goodman through his common control of both the Debtor and GNGS that took place between December 31, 2022, and August 1, 2022, a much broader time period than the Hudson Litigation and 18920 Litigation which were executed in mere days.

8.    Most recently, on July 29, 2024, the Trustee filed his Original Complaint in the Symbiont Litigation seeking to pierce the corporate veil against Goodman Investment Holdings, LLC n/k/a Symbiont Ventures, LLC ("Symbiont") as the alter ego of Unified Field Services, Inc ("UFS"), asserting claims for constructively fraudulent transfers, and the recharacterization of debt based on that alter ego theory. *Symbiont*, Adv. Proc. No. 24-03054-mvl, ECF No. 1. Prior to the filing of the Symbiont Litigation, UFS entered a consent judgment admitting to nearly six million dollars in unpaid debt owed to the Debtor. The Trustee only recently filed the Symbiont Litigation, and discovery is in its infancy.

9.    Both the Genesis Litigation and Symbiont Litigation are less developed for purposes of discovery compared to the Hudson Litigation and 18920 Litigation. Further, the

Genesis Litigation and Symbiont Litigation involve totally different timelines, facts, and relevant defendants than the 18920 and Hudson Litigation. These differences, combined with the fact that the parties have been able to coordinate discovery without issue in the 18920 and Hudson Litigation, indicate that it would not be helpful to consolidate the Genesis Litigation and Symbiont Litigation with the Hudson Litigation and 18920 Litigation.

### III.  ARGUMENTS AND AUTHORITIES

10. The Trustee, under his exclusive duty to administer the estate, organized the Adversary Proceedings by transaction to focus the issues and streamline discovery and trial. The Court should permit the Trustee to prosecute the Genesis Litigation and Symbiont Litigation proceedings independent of both one another and the Hudson and 18920 Litigation because (1) the Genesis Litigation and Symbiont Litigation involve transactions independent of the Hudson Litigation and 18920 Litigation so consolidation would not inure any benefit to the litigants or the judicial system, (2) there is no risk of conflicting results, and (3) the unique considerations of the Trustee's role in a chapter 7 case counsel against an omnibus consolidation of all the Adversary Proceedings.

11. Rule 42(a) provides the Bankruptcy Court with discretion to "consolidate the actions; or . . . issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(2)–(3). In the Fifth Circuit, courts evaluate nine (9) non-exclusive factors when considering consolidation:

   (1)   the cases are pending in the same court or district;

   (2)   the cases involve a common party;

   (3)   the cases involve common issues of law;

   (4)   the cases involve common issues of fact;

    (5)    the risk of prejudice if the cases are consolidated;

    (6)    consolidation will not result in an unfair advantage;

    (7)    consolidation will conserve judicial resources;

    (8)    consolidation will reduce the time for resolving the cases; and

    (9)    consolidation will reduce expenses;

*Mayfield v. Am. Auto Ins. Co.*, 2003 WL 21250935, at *1 (N.D. Tex. May 27, 2003). The Trustee cannot dispute that there is some overlap in the parties and background facts in all the Adversary Proceedings. But, that these Adversary Proceedings stem from the actions of common actors by virtue of one person's common control of multiple entities is not dispositive, and the factors in favor of consolidation end with those similarities. There is nothing to be gained by consolidating the Genesis Litigation and Symbiont Litigation because the Trustee has already been coordinating discovery in a manner that will increase efficiency and reduce costs. Further, there is no risk that keeping the Genesis Litigation and Symbiont Litigation separate will result in inconsistent evidentiary rulings because the factual nexus underlying those claims is distinct. As a result, there is no pragmatic reason to consolidate the Genesis Litigation and Symbiont Litigation, and accordingly consolidation as to those two proceedings should be denied.

**A.**    **The Genesis Litigation and Symbiont Litigation are factually distinct, and any benefit can be achieved by coordinating discovery without consolidation.**

    12.    In essence, the Hudson Litigation and 18920 Litigation are complex schemes whereby J.E. Goodman and certain of his entities received substantial funds for their preferred stocks and bonds from buyers financed by the Debtor's money, while the Debtor refused to use those funds to make good on its outstanding accounts payable. The Genesis Litigation and Symbiont Litigation are also important lawsuits, but are tangential at best to the factual predicate in the Hudson and 18920 proceedings.

13. While the Genesis Litigation and Symbiont Litigation share some of the same parties as the Hudson Litigation and 18920 Litigation, the salient point is that the transactions targeted in the Genesis Litigation and Symbiont Litigation are materially different from the allegations in the Hudson Litigation and 18920 Litigation. The Genesis Litigation involves J.E. Goodman's use of a Debtor account to make payments to Prosperity Bank on account of a debt owed by GNGS (and personally guaranteed by J.E. Goodman) when the Debtor had no obligation to do so, and subsequently pledging Debtor assets to secure said debt. That case is a classic fraudulent transfer claim, and incorporates a breach of fiduciary duty claim against J.E. Goodman for his exercise of common control over both the Debtor and GNGS to cause the Debtor to make those transfers for his personal and GNGS's benefit, with no benefit to the Debtor.

14. The Symbiont Litigation involves a debt owed by UFS to the Debtor, an entity owned by Symbiont, which UFS consented to full and final judgment for the Debtor to collect. As a result of specific payments made by UFS to Symbiont while UFS owed debt to the Debtor, coupled with the systematic exercise of J.E. Goodman's common control over multiple entities to divest the Debtor of assets for his personal benefit, the Symbiont Litigation seeks an alter ego determination for the full amount of the judgment to which UFS consented. Alter ego is a much more factually intensive determination than many of the claims asserted in the Adversary Proceedings, and involves core facts centered around the use of this common control as an instrumentality of fraud on the Debtor and the Debtor's creditors distinct from the facts at issue in the other Adversary Proceedings.

15. Common facts and law do not mandate consolidation, and where distinct proceedings focus on distinct facts or transactions common sense counsels against consolidation for any purpose. *See Network System Technologies, LLC v. Samsung Electronics Co., Ltd.*, 2023

WL 4534358, at *3 (E.D. Tex. July 13, 2023). In *Network System*, the court refused to consolidate two lawsuits involving the same plaintiff, defendant, and patents because the underlying infringing product was different in each suit. *Id*. Further, in *Rizzo v. Wyeth*, Judge Rosenthal found that "[w]ith a reasonable amount of cooperation, the lawyers in the different cases can use similar scheduling orders and discovery plans, adapting them to the varying circumstances of specific cases" and refused to order consolidation. 2010 WL 2605360, at *2 (S.D. Tex. June 28, 2010). Accordingly, courts routinely deny consolidation where the lawsuits involve the same parties but are factually distinct, and where any benefits can be gained by amicable coordination without court involvement.

16. The Trustee submits that he has a good working relationship with counsel for the J.E. Goodman Movants. The Trustee and counsel for the J.E. Goodman Movants have been making their best efforts to coordinate discovery to streamline the Adversary Proceedings, reduce costs, and impose minimal burden on witnesses. Any benefit to be gained through consolidation, the Trustee believes, has already been achieved. Thus, this factor does not favor consolidation.

**B.     There is no risk of conflicting results.**

17. Just as consolidation would not provide any upside, there is also no downside to denying consolidation. When weighing consolidation courts typically consider whether consolidation would prevent the risk of inconsistent rulings or conflicting results. *Certified/LVI Environmental Servs., Inc. v. PI Const. Corp.*, 2003 WL 1798542, at *2 (W.D. Tex. Mar. 3, 2003) ("The goal of consolidating cases is to prevent separate suits from producing conflicting results."). Here, as detailed above, the Genesis Litigation and Symbiont Litigation are factually distinct. As a result, the discovery in both cases will target different facts, documents, timelines, and requests separate and apart from those items that are targeted in the other Adversary Proceedings. Any

necessary judicial resolution will not create conflicting results because by definition the disputes, if they occur, will center around different facts and evidence. Thus, there is no risk of inconsistent results which favors keeping the cases separate and this factor does not favor consolidation.

C. **The Trustee's litigation strategy should be given deference.**

18. The Trustee occupies a unique position as a fiduciary of the chapter 7 estate with the exclusive discretion on how to liquidate the estate's claims. The typical factors considered by courts are not exhaustive. *Mayfield*, 2003 WL 21250935, at *1. Accordingly, a unique factor that should be considered in the chapter 7 context is the Trustee's position as a fiduciary of the estate tasked with the exclusive authority to manage and liquidate estate claims.

19. "The trustee shall collect and reduce to money the property of the estate for which such trustee serves" and "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(1) and (4). "The fundamental purpose of the Bankruptcy Act (11 USCA) is to reduce the assets to cash as speedily as practicable for equitable distribution to the creditors." *W. Tex. Const. Co. v. Nelson*, 77 F.2d 754, 755 (5th Cir. 1935); *see also Straton v. New*, 283 U.S. 318, 320–21 (1931). The Trustee has the sole discretion to litigate estate claims and direct estate litigation subject to the provisions of the Bankruptcy Code. *In re Smith*, 426 B.R. 435, 441 (E.D.N.Y. 2010). For that reason, the Fifth Circuit has an entire line and progeny of case law establishing a high bar for a party in interest that seeks to wrest control of litigation from the Trustee. *In re La. World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987).

20. The Trustee, in his business judgment, has organized the Adversary Proceedings by transaction. Keeping certain transactions separate, like the claims against GNGS and Symbiont, helps organize the litigation and prevent overbroad discovery. Accordingly, the Trustee's desire

that the Genesis Litigation and Symbiont Litigation remain separate should be given weight and consolidation of those lawsuits denied.

**D.** **Further consolidation of the Adversary Proceedings for trial is not proper.**

21. In the Motion to Consolidate, counsel for the J.E. Goodman Movants suggested that the relief sought is merely the first step to ultimately consolidating the Adversary Proceedings into Case No. 3:23-cv-01397-S pending in the District Court (the "District Court Litigation"). Mot. to Consolidate at 3 n.2. Further consolidation of any of the Adversary Proceedings would be grossly inappropriate because it would only cause delay, added complexity, confusion, and the Trustee is not even permitted to sue certain of the defendants in the District Court Litigation.

22. First, the Adversary Proceedings are progressing much quicker than the District Court Litigation. Many of the Adversary Proceedings are already progressing through or nearing the end of discovery whereas the District Court Litigation has not even gotten past the Rule 12(b) motion stage. If any court combined the Adversary Proceedings with the District Court Litigation, it would cause incredible delay in administering the estate and liquidating the claims. Thus, consolidation of the Adversary Proceedings with the District Court Litigation is not proper because it would not promote efficiency or the conservation of judicial resources.

23. Second, the District Court Litigation is a RICO case whereas many of the Adversary Proceedings are fraudulent transfer and breach of fiduciary duty claims. While the background facts in the District Court Litigation and Adversary Proceedings may be similar, the essential and critical facts at trial will be different. This is the very reason the Trustee has organized the Adversary Proceedings in separate transactions. If the District Court Litigation is consolidated with the Adversary Proceedings then it would force the Trustee to modify his trial strategy and would also require an extensive presentation of the evidence. It is possible that the RICO,

fraudulent transfer, and breach of fiduciary duty issues, if tried at the same time, would confuse a jury and make it difficult to do justice to any single claim. Thus, the District Court Litigation and Adversary Proceedings should remain separate due to the confusion and complexity that would result by consolidating them.

24. Third, while this Court has entered a *Report and Recommendation* to the District Court which has subsequently been adopted regarding withdrawal of the reference in the 18920 Litigation, and the Trustee does not currently object to substantially the same treatment in the Hudson Litigation, those cases are to be transmitted to the District Court only when they are trial ready. *See 18920*, Adv. Proc. No. 23-03072-mvl, ECF Nos. 78 and 86; *Hudson*, Adv. Proc. No. 23-03090-mvl, ECF Nos. 60, 62, 63. That the Hudson and 18920 Litigation will eventually be tried by the District Court does not mean consolidation with the District Court Litigation is proper. Rather, the Trustee submits that upon the eventual withdrawal of the reference when those cases are certified trial ready, those cases should move forward to trial without consolidation of the still-developing trial calendar of the District Court Litigation.

25. Lastly, under the settlement that resolved the Trustee's adversary proceeding against FedEx, FedEx received the exclusive right to sue Prosperity Bank who is currently a defendant in the District Court Litigation. Further, the Trustee settled with Frinzi Family Trust who is also a defendant in the District Court Litigation. The Trustee cannot sue either of these entities. Thus, joining the Trustee as a plaintiff to an action against these entities would be inappropriate and would violate the settlement agreements already approved by this Court.

26. While the Trustee is mindful of the position the J.E. Goodman Movants are in defending multiple lawsuits, the facts and circumstances presented by the Adversary Proceeding do not warrant consolidation beyond the scope of what the parties have already informally

implemented. That a party is named in multiple adversary proceedings does not, by itself, establish the propriety of consolidation.

27. For the foregoing reasons, the Trustee does not oppose consolidation of the Hudson Litigation and 18920 Litigation for pretrial purposes only, but any consolidation of the Genesis Litigation and Symbiont Litigation is not appropriate and would not provide any material benefit. Any further consolidation of any of the Adversary Proceedings with the District Court Litigation is also inappropriate. These cases are on a course for efficient resolution through settlement or trial. The Court should not allow one set of defendants to derail this litigation for their own benefit.

## IV.  PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests an order sustaining his limited objection and consolidating the Hudson and 18920 Litigation for pretrial proceedings only and denying consolidation of the Genesis and Symbiont Litigation.

RESPECTFULLY SUBMITTED this 7th day of November, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Conor White*
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas D. Berghman, Esq.
    Texas Bar No. 24082683
    Conor P. White, Esq.
    Texas Bar No. 24125722
    Jacob J. King
    Texas Bar No. 24136951
    500 N. Akard Street, Suite 4000
    Dallas, Texas  75201-6605
    Telephone:  (214) 855-7500
    Facsimile:   (214) 855-7584
    E-mail:        drukavina@munsch.com
                  tberghman@munsch.com
                  cwhite@munsch.com
                  jking@munsch.com

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 7th day of November, 2024, true and correct copies of this document were electronically served by the Court's CM/ECF system on the parties entitled to notice thereof, including on counsel for the J.E. Goodman Movants.

By: */s/ Conor White*
    Conor P. White, Esq.